UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION
CIVIL ACTION NO._____

APPALACHIAN REGIONAL
HEALTHCARE, INC.                                                                           PLAINTIFF

V.

U.S. NURSING CORPORATION                                          DEFENDANT
      Serve: CT Corporation System
             306 West Main Street
             Suite 512
             Frankfort, KY  40601

\*\* \*\* \*\* \*\* \*\*
COMPLAINT
\*\* \*\* \*\* \*\* \*\*

Plaintiff, Appalachian Regional Healthcare, Inc. (hereinafter "ARH"), by counsel, states the following for its Complaint against U.S. Nursing Corporation (hereinafter "USN"):

PARTIES

1. Plaintiff, ARH, is a corporation organized and existing under the laws of the Commonwealth of Kentucky, with its principal office located at 2285 Executive Drive, Lexington, Kentucky  40505.

2. Defendant, U.S. Nursing Corporation, is a corporation organized and existing under the laws of the State of Colorado, with its principal place of business located at 6399 South Fiddler's Green Circle, Suite 100, Greenwood Village, Colorado  80111.  Its registered agent for service of process is CT Corporation Systems, 306 West Main Street, Suite 512, Frankfort, Kentucky 40601.

1

## JURISDICTION AND VENUE

3. This court may take diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties hereto are citizens of different states as set forth hereinabove, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

4. Venue is proper in this Court and in the Pikeville Division because the controversy herein arises from litigation pending in the Letcher Circuit Court, Whitesburg, Kentucky, and a contract entered into by the parties relating to the ARH facility in Whitesburg, Letcher County, Kentucky.

## FACTS

5. Plaintiff, ARH, and Defendant, USN, are both Defendants in a lawsuit pending in the Letcher County, Kentucky, Circuit Court, styled *Ralph Edward Proffitt, et al. v. Corley Manufacturing Co. d/b/a Corley Sawmill Machinery, et al., Civil Action No. 08-CI-360.*

6. Said litigation in Letcher Circuit Court involves various claims of injury by the Plaintiff, Ralph Edward Proffitt, resulting from a sawmill accident, and his subsequent medical care, including that received at the ARH facility in Whitesburg, Kentucky. Specifically, there are allegations that the injuries sustained by Mr. Proffitt were made worse by the actions of Ms. Constance Foote, a nurse employed by USN, but who was working at ARH as replacement staff under and subject to a contract between USN and ARH.

7. At or about the time in question, ARH was under the effects of a strike by its nursing staff, and had entered a contract described as a "Job Action Staffing Agreement" with USN for USN to provide staffing to fill nursing positions for the duration of the strike and concurrent work stoppage. ARH would provide consideration for such staffing services by

2

payment of a fee directly to USN.  A copy of the contract is attached hereto and incorporated as a part hereof as Exhibit "A".

8. Nurse Foote's actions at ARH were within the course and scope of her employment by USN and the "Job Action Staffing Agreement."

9. The contract between ARH and USN included various terms and provisions governing the provision of nursing staff, and the relationship between the two parties to the contract.  The contract refers to ARH as "Facility" and to USN as "Corporation."

10. The contract provides that any and all nursing staff provided by USN remain the employees of USN, and that USN is responsible for their compensation, tax withholding, and other benefits including workers' compensation and unemployment.

11. Paragraph A.9. of the "Job Action Staffing Agreement" states that "Corporation [USN] agrees that all such provided staff are not employees of the Facility [ARH]."

12. Paragraph A.11. of the "Job Action Staffing Agreement" requires USN to maintain and provide proof of, insurance coverage for malpractice claims in the amounts of $1 million per occurrence and $3 million in the aggregate.  In addition, USN agreed in Paragraph 11 to maintain an umbrella insurance policy with a coverage amount of $4 million.

13. Paragraph B.2.a. of the "Job Action Staffing Agreement" states that "Facility" [ARH] "shall exercise complete supervision over the job performance of all staff provided to the Facility [ARH] by the Corporation [USN]."

14. Paragraph D.11. of the "Job Action Staffing Agreement" states "It is expressly agreed and understood by the parties hereto that neither party is an agent, partner, or joint venturer with, or of, the other party. It is understood that Staff Members provided under this Agreement are not independent contractors of FACILITY but employees of the Corporation.

3

15. Paragraph D.13. of the "Job Action Staffing Agreement" provides for arbitration to resolve any disputes under the contract. ARH states, however, that the prior breach of said contract by USN, as will be described hereinbelow, goes to the essence of said contract, and the relief necessary for said breach goes beyond that which could be addressed in arbitration, such that the arbitration provision is no longer enforceable, and the jurisdiction of this Court is proper.

16. Paragraph D.15. of the "Job Action Staffing Agreement" states: "Corporation [USN] shall indemnify, defend, save, and hold harmless FACILITY [ARH], its officers, trustees, employees, attorneys and agents from any and all liability or damage that arises from (a) the negligent or intentional act or omission of Corporation, its employees or agents, including staff members assigned by Corporation to FACILITY pursuant to this Staffing Agreement; and (b) any and all employment claims made against Corporation or Corporation and FACILITY jointly."

17. On or about September 11, 2012, USN, acting through its legal counsel, filed a motion for summary judgment in the Letcher Circuit Court seeking its dismissal under the legal theory that Nurse Constance Foote was the "borrowed servant" of ARH, and thus ARH, not USN, was responsible for her actions under vicarious liability. A copy of said motion is attached hereto and incorporated as a part hereof as exhibit "B."

18. Said motion by USN stated:

"Nurse Foote performed her tasks under the direction of Whitesburg ARH staff, on their premises, for their purposes. She was loaned to Whitesburg ARH pursuant to a written contract with a temporary staffing agency whose sole connection at the time of the incident was payment of her wages. Specifically, for the purpose of Nurse Foote's assignment, Whitesburg ARH retained the authority to fire Nurse Foote as well as the ultimate responsibility for her supervision, which under Turner equates to complete control. Thus, with respect to the allegations raised in the present case, Nurse Foote was the borrowed servant under the complete control of ARH, and US Nursing is relieved from all liability for Nurse Foote's actions."

4

19. ARH has objected to the motion by USN in the Letcher Circuit Court; the motion remains on the Court's docket, and has not been noticed for a hearing as of the preparation of this Complaint.

20. In addition, ARH has on multiple occasions notified USN that its position in the Letcher Circuit Court is in ongoing breach of the "Job Action Staffing Agreement," and has given USN multiple opportunities to cure said breach by withdrawing the motion and ceasing to assert a "borrowed servant" defense.

21. Specifically, ARH extended to USN an opportunity to cure its breach of the "Job Action Staffing Agreement" by signing a letter agreement setting forth various assurances regarding the insurance coverage and indemnity provisions of said agreement. A copy of the proposed letter agreement is appended hereto as Exhibit "C."

22. To date, USN has refused to sign the letter agreement as tendered by ARH. Specifically, USN sent a written response, attached herewith as Exhibit "D", wherein it also rescinded its previous position on the "borrowed servant" issue, to wit, that it was a legal issue only and would not be litigated at trial or on appeal, and now stated it would push the "borrowed servant" issue as a jury issue if the Circuit Court denied its motion. USN further indicated that, contrary to previous assurances, its insurance carrier would not be a party to any letter agreement.

23. To date, USN has failed and refused to effect a cure of its breach of the "Job Action Staffing Agreement" and thus continues to assert a legal position in the Letcher Circuit Court that is inconsistent with, and in breach of, said agreement.

BREACH OF CONTRACT

24. ARH adopts and incorporates by reference the factual statements contained in paragraphs 1 through 23 of the Complaint.

25. The assertion of a "borrowed servant" defense by USN in the afore-cited Letcher Circuit Court civil action, and USN's claim thereby that Nurse Constance Foote, at the time of the incident in question, was the "borrowed servant" and therefore the employee of ARH for purposes of legal liability, is inconsistent with, and in breach of, the duties and obligations of USN under the "Job Action Staffing Agreement" drafted by USN and entered into by USN with ARH.

26. Specifically, the breaches of the "Job Action Staffing Agreement" include, but are not limited to, USN acting in contravention to those provisions identified in paragraphs 11, 12, 13, 14, 15, and 16 above.

27. USN's attempt to deny its vicarious liability for the actions of Nurse Foote, and at the same time place such responsibility on ARH, is in breach of the "Job Action Staffing Agreement" by:

a. USN stating that, at the time of the incident in question, it was not the employer of Nurse Foote, when its Agreement states that USN was at all times Nurse Foote's employer, despite in the same agreement USN giving control over Nurse Foote's job performance to ARH;

b. USN attempting to avoid liability, and place liability on ARH, when its Agreement specifically includes an obligation for USN to indemnify, defend, and hold harmless ARH; and

6

c. USN creating a situation under which liability of Nurse Foote could be apportioned solely to ARH by reason of the legal positions taken, and rulings sought, by USN in the Letcher Circuit Court.

d. USN creating a situation in which ARH may become legally liable for damages to the Plaintiff, which USN is incapable of indemnifying or reimbursing ARH either by way of insurance coverage or its corporate assets.

28. USN's breaches of the "Job Action Staffing Agreement" have exposed ARH to a significant risk of liability in a civil action in which damages of several million dollars are being sought by the Plaintiff, Mr. Proffitt, as well as the prospect of significant legal expenses in the many thousands of dollars, to not only defend itself in said civil action to a much higher degree than otherwise would have been required, but in addition thereto the retention of legal counsel to seek a resolution of the said breach of contract, and respond to a legal position taken by a co-defendant, USN, contrary to the "Job Action Staffing Agreement" and the obligations of USN to defend and indemnify ARH for any liability that occurs by reason of the actions of USN employees.

29. USN's breaches of the "Job Action Staffing Agreement" have deprived ARH of very significant benefits of its bargain under said contract, i.e., obtaining replacement nursing staff while being protected from liability for their actions, for which ARH has paid a considerable sum to USN, in the amount of $656,431.00. ARH is entitled to recover damages from USN to the extent contractual rights purchased by ARH have been abrogated by the actions of USN.

30. ARH seeks relief from this Court as follows:

    a.    A declaration of rights under 28 U.S.C. § 2201, declaring that the assertion of the "borrowed servant" doctrine by USN is in breach of the "Job Action Staffing Agreement";

    b.    Equitable and injunctive relief directing USN to cease and desist from asserting the "borrowed servant" doctrine against ARH or any other party in the afore-cited Letcher Circuit Court civil action, or otherwise;

    c.    A declaration of rights under the "Job Action Staffing Agreement" as to the scope and meaning of USN's (i) duties under the indemnity paragraph, D.15., and (ii) whether the policy of insurance in effect for USN at the time in question meets the requirements for insurance coverage as set forth in paragraph A.11; and

    d.    Damages sustained by ARH as a result of the said breach of contract by USN.

## INJUNCTIVE RELIEF

31.    ARH adopts and incorporates by reference the factual statements contained in paragraphs 1 through 30 of the Complaint.

32.    A jury trial of the afore-cited Letcher Circuit Court case is scheduled to begin in September of 2014.

33.    It is anticipated that Plaintiff will seek to obtain at trial a substantial verdict against the collective Defendants of several million dollars.

34.    By reason of the afore-stated actions of USN, it will enter said trial in a legal position adverse to that of ARH, including but not limited to its assertion that Constance Foote, RN, was the borrowed servant of ARH at the time of the injury to the Plaintiff, Barry Proffitt.

35.    The adverse position of USN is not only in breach of its "Job Action Staffing Agreement" with ARH, but poses a substantial likelihood of a trial resulting in a substantially

worse outcome for the medical defendants, ARH and USN, by reason of creating conflicting positions between them.

36. Once a jury has deliberated and rendered a verdict, absent some reversible error in the trial, the verdict becomes *res judicata*, and is an irrevocable result of the proceeding, which would require any Defendant against whom a verdict is rendered to pay damages awarded. It is more likely than not that a trial going forward with Defendants adverse to one another will result in a higher damages award against the Defendants.

37. Such higher jury verdict, once rendered, constitutes irreparable harm to the extent damages over and above those which might have been awarded then become permanent and unappealable. Likewise, adverse jury verdicts cause irreparable damage to ARH by affecting its accreditation, its risk assessment for insurance purposes, and its reputation and good will in the medical community, and the local community.

38. USN's breach of contract also creates substantial concern over USN's ability, or intent, to meet its contractual obligations to "indemnify, defend, and hold harmless" ARH.

   a. USN has clearly taken a position adverse to ARH, a breach of its duty to defend;

   b. USN has limited insurance liability limits applicable to the Circuit Court action, which may or may not be sufficient to meet any obligation, but are less likely to be adequate under the afore-stated adverse conditions;

   c. USN has limited financial ability as a corporation to meet its obligations under the Agreement to indemnify, defend, and hold harmless ARH from any damages assessed by reason of the actions of Nurse Foote.

39. No other parties to the Circuit Court litigation would be harmed by entry of injunctive relief by this Court.

40. The ability to rely on contractual terms and provisions, and look to the Courts for enforcement of same, is good public policy and will be sustained by entry of appropriate injunctive relief herein.

41. ARH has no adequate or speedy remedy at law for the above-mentioned conduct of USN, and this statutorily-authorized action for injunctive relief is ARH's only means for securing relief.

42. ARH therefore requests injunctive relief to restrain USN from its ongoing breach of the "Job Action Staffing Agreement" as enumerated above.

WHEREFORE, Appalachian Regional Healthcare, Inc., demands in judgment from the Defendant, U.S. Nursing Corporation, as follows:

a. A declaration of rights under 28 U.S.C. § 2201, declaring that the assertion of the "borrowed servant" doctrine by USN is in breach of the "Job Action Staffing Agreement";

b. A declaration of rights under the "Job Action Staffing Agreement" as to the scope and meaning of USN's (i) duties under the indemnity paragraph, D.15., and (ii) whether the policy of insurance in effect for USN at the time in question meets the requirements for insurance coverage as set forth in paragraph A.11;

c. Equitable and injunctive relief pursuant to Fed.R.Civ.P. 65, directing USN, and all those in active concert or participation with USN, to cease and desist from asserting the "borrowed servant" doctrine against ARH or any other party in the afore-cited Letcher Circuit Court civil action, and to cease and desist from any and all other conduct in breach of the "Job Action Staffing Agreement" complained of herein or otherwise;

d. Damages sustained by ARH as a result of the said breach of contract by USN;

e. Trial by jury on all issues so triable; and

  f.  Any and all other relief to which ARH is entitled in this proceeding.


         FROST BROWN TODD LLC

         _/s/ David C. Trimble_____
         Greg E. Mitchell
         David C. Trimble
         250 West Main Street
         2800 Lexington Financial Center
         Lexington, KY  405070
         859-231-0000
         859-231-0011 (fax)
         dtrimble@fbtlaw.com

         COUNSEL FOR APPALACHIAN REGIONAL HEALTHCARE, INC.

\\lexusr\Desktop\11632\David Trimble\Electronic Filings\NEW CASE - PROFFIT V ARH (JULY 2014)\ARH v. USN Complaint - 4851-0067-6635.2(1).doc