UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| APPALACHIAN REGIONAL HEALTHCARE, INC., | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) ) | Civil No. 14-122-ART |
| v. | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| U.S. NURSING CORPORATION, | ) ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

One might be forgiven for wondering what Appalachian Regional Healthcare ("ARH") and U.S. Nursing Corporation ("USN") are fighting about, or whether federal court is the correct field of battle. Article III of the Constitution, which limits the jurisdiction of federal courts to cases or controversies, requires federal courts to ask these questions. Occasionally, doing so reveals that the parties are fighting about nothing at all—or at least nothing that a federal court may resolve. This is one such occasion. Because there is no live case or controversy that this Court may resolve, the Court lacks subject-matter jurisdiction.

## BACKGROUND

This conflict did not begin in federal court (nor will it end here). It began with a sawmill. When Ralph Edward Proffitt was injured in a sawmill accident, he did the obvious thing: He sought medical treatment. R. 1 at ¶ 6. According to Proffitt, the treatment he received from one of the attending nurses, Constance Foote, made his injuries worse, not better. Proffitt then sued the sawmill, Nurse Foote, and the

corporations responsible for Nurse Foote in Letcher County Circuit Court. *Ralph Proffitt v. Corly Mfg. Co.*, Civil Action No. 08-CI-360; *see also* R. 1 at ¶¶ 5–6, 17–19.

At the time of Proffitt's treatment, ARH's regular nurses were on strike. R. 1 at ¶ 7. To fill the gap, ARH and USN had entered into a Staffing Agreement ("the Agreement"). Under the Agreement, USN would provide the nurses, and ARH would exercise "complete supervision over the[ir] job performance." *Id.* at ¶ 13. All the nurses USN provided, however, would remain employees of USN—not of ARH. *Id.* If a nurse caused any liability, USN agreed to "indemnify, defend, save, and hold harmless" ARH. *Id.* at ¶ 16.

On September 11, 2012, USN moved for summary judgment in *Proffitt*, arguing that Kentucky's borrowed-servant doctrine absolved USN of liability. *See* R. 1 at ¶ 17. The borrowed-servant doctrine applies when an employer loans his employee to a third-party and that third-party directs the employee's work: the borrowed-servant doctrine shifts the usual employer liabilities to the third-party. *See Carnes v. Dep't of Econ. Sec.*, 435 S.W.2d 758, 761–62 (Ky. 1968). So, because USN "lent" Nurse Foote to ARH, under the borrowed-servant doctrine, ARH—not USN—would be responsible for Nurse Foote's alleged torts.

ARH filed this action for breach of contract and an injunction in an attempt to curtail the arguments that USN can raise in state court. ARH argues that USN's reliance on the borrowed-servant doctrine in the state-court litigation constitutes an "ongoing breach" of the Agreement. R. 1 at ¶ 20. USN refused to withdraw the defense and reserved the right to assert the defense at trial. R. 1-4 at 1–3. USN did agree, however, that it would honor the indemnification clause no matter how the borrowed-servant

2

motion came out. *Id.* at 3.

ARH asks the Court for three things: (1) a declaration that asserting the borrowed-servant doctrine is a breach of the Agreement, (2) a list of USN's duties under the indemnification clause of the Agreement, (3) and a finding of whether USN's insurance policy meets the insurance requirements under the Agreement. ARH also seeks to enjoin USN from asserting the borrowed-servant defense in the *Proffitt* litigation. *Id.* USN moved to dismiss this action for lack of subject-matter jurisdiction and for failure to state a claim for relief. R. 16. In the interim, the *Proffitt* court denied USN's motion for summary judgment. Accordingly, this Court denied as moot ARH's motion for a preliminary injunction. R. 22. ARH moved the Court to reconsider its denial of the preliminary injunction motion, R. 23, and moved for a hearing, R. 26. Because the Court will grant USN's motion to dismiss, it will deny as moot ARH's motions to reconsider and for a hearing.

## DISCUSSION

Article III of the Constitution limits federal court jurisdiction to cases or controversies. *See* Fed. R. Civ. P. 12(b)(1); *Michigan v. Meese*, 853 F.2d 395, 397 (6th Cir. 1988). To satisfy the case-or-controversy requirement, ARH must show that (1) it faces an actual or threatened concrete injury, (2) its harm is fairly-traceable to the defendant's conduct, and (3) this Court can likely redress its injury. *Meese*, 853 F.2d at 398; *Courtney v. Smith*, 297 F.3d 455, 460 (6th Cir. 2002). Because ARH fails to state a case or controversy, the Court will grant USN's motion to dismiss.

ARH claims that it will imminently suffer a qualifying injury. It is a "virtual certainty," ARH argues, that an adverse verdict in *Proffitt* would lead to an investigation

by the Joint Commission on the Accreditation of Hospital Organizations "and perhaps other regulatory bodies." R. 24 at 8. ARH also claims that, because it is self-insured, an adverse verdict "could potentially affect" its ability to respond to other claims and maintain its insurability. *Id.* at 9.

But ARH's unsubstantiated allegations are not sufficient to plead an injury and so fail to create a case or controversy. ARH states, without support, that regulatory investigation is "virtual[ly] certain[ ]" to follow an adverse verdict—a verdict that has not been rendered, in a case that has not been set for trial. R. 28 at 1–2. Put another way, ARH will be injured *if* the jury in *Proffitt* renders a verdict adverse to ARH, and *if* a regulatory agency decides to investigate as a result, and *if* that investigation then gets around to finally causing ARH some actual injury. Such a speculative complaint is precisely the sort that this Court cannot remedy. *See N. Am. Natural Res., Inc. v. Strand*, 252 F.3d 808, 812–13 (6th Cir. 2001). The *Strand* court was highly skeptical of an injury framed in the subjunctive. *Id.* This skepticism is all the more justified when it relies on the independent, intervening decisions of multiple third parties. ARH may have a concrete injury should the case go to trial, the jury render an adverse verdict, and an agency launch an investigation of ARH. But none of the links in this speculative chain has been forged. As a result, ARH has not alleged a concrete, rather than hypothetical, injury.

ARH's second alleged injury is even less substantial. According to ARH, because it is self-insured, an adverse verdict "could potentially affect" its ability to respond to other claims and maintain insurability. "Could potentially" is classically speculative language. And again, this alleged injury assumes an adverse outcome in state court.

4

Absent actual or imminent harm, ARH has not presented a live case or controversy. Consequently, the case must be dismissed.

## CONCLUSION

Courts exist to hear and resolve cases and controversies. Cases and controversies require an actual or imminent injury. Mere arguments are not enough. In an argument without injury, like the dispute between ARH and USN, the Court may not intervene.

Accordingly, it is **ORDERED** that:

(1) Defendant's motion to dismiss, R. 16, is **GRANTED**.

(2) Plaintiff's motions for reconsideration, R. 23, a hearing, R. 26, and leave to file a sur-reply, R. 26, are **DENIED AS MOOT**.

(3) This matter is **STRICKEN** from the Court's active docket.

This the 18th day of November, 2014.

Signed By:
*Amul R. Thapar* AT
United States District Judge