# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# AT PIKEVILLE

| | |
|---|---|
| **APPALACHIAN REGIONAL HEALTHCARE, INC.,** <br>     **Plaintiff,** <br><br> V. <br><br> **U.S. NURSING CORPORATION,** <br>     **Defendant.** | **CIVIL ACTION NO. 7:14-122-KKC-EBA** <br><br><br> **OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on motions by plaintiff Appalachian Regional Healthcare, Inc. to exclude certain testimony of U.S. Nursing Corporation's experts Dr. Charles Eckerline (DE 186) and Dr. Phillip Tibbs (DE 187).

### I.     Background

With this action, plaintiff Appalachian Regional Healthcare, Inc. primarily seeks reimbursement for the costs it incurred in defending and settling an action against it in Letcher Circuit Court.

The state-court action was brought in 2008 by Ralph Profitt and his wife after Ralph suffered a severe spinal-cord injury while he was working at a sawmill in Whitesburg, Kentucky. (DE 189, Statement at 1.) At the time of the injury, Profitt was attempting to repair a piece of sawmill equipment. After the injury, Profitt's co-employees drove him in a pickup truck to a hospital in Whitesburg operated by Appalachian where he was treated. Profitt is now paralyzed from the waist down. (DE 189, Statement at 1-2.)

At the time, certain members of Appalachian's nursing staff were on strike. (DE 52, Compl., ¶ 9, Ex. A.) To replace its striking staff, Appalachian entered into a staffing

agreement with defendant U.S. Nursing Corporation, which agreed to provide temporary personnel to fill the vacant nursing positions. (DE 52, Compl., Ex. A, Agreement.) One of the nurses who U.S. Nursing provided was Constance Foote. She was on duty at Appalachian's emergency room when Proffitt arrived at the hospital.

After being treated at the hospital, Profitt and his wife brought suit in state court, initially asserting claims against the manufacturer and installer of the equipment and Appalachian. (DE 197-1, Original Compl.) Later, the Profitts amended the complaint to add as defendants U.S. Nursing and three nurses: Nurses Foote, Sheila Hurt, and Roxanna Parsons. (DE 65-2, First Am. State Ct. Compl.) The Profitts alleged that the three nurses "failed to stabilize and immobilize" Ralph when moving him from the pickup to the emergency room, which worsened his injuries. (DE 65-2, First Am. State Court Compl., ¶16.) Nurses Hurt and Parsons are regularly employed by Appalachian.

The Profitts asserted in the state-court action that Appalachian was vicariously liable for the actions of Hurt, Parsons, and Foote and that U.S. Nursing was vicariously liable for Foote's actions. (DE 25-1, Second Am. State Ct. Complaint, ¶¶ 27-28.) The Profitts also asserted that Appalachian was directly liable for Profitt's injuries because it negligently staffed the hospital and negligently trained the hospital staff. (DE 25-1, State Ct. Compl. ¶¶ 30-31.) According to Appalachian, the Profitts sought compensatory damages of $23.5 million and additional punitive damages. (DE 208, Statement at 2.)

The state court eventually granted Appalachian summary judgment on all claims against it except for the claim of vicarious liability for the negligent actions of Nurse Foote. (DE 197-16, Nov. 13, 2015 Order (summ. j. on negligent training and staffing claims); DE 206-8 Jan. 10, 2014 Order (summ. j. for all acts inside the emergency room.))

Likewise, the court entered summary judgment in favor of Appalachian's nurses Hurt and Parsons. (DE 208-13, Aug. 23, 2012 Order.) The trial judge also entered an order

prohibiting any party from arguing or introducing evidence that Nurse Hurt or Parsons was the individual who came out of the emergency room to assist Profitt with entering the hospital. The trial judge determined that all parties had an opportunity to respond to the motions for summary judgment filed by Nurses Hurt and Parsons and that U.S. Nursing filed no response. Accordingly, the trial judge found that the liability of the two nurses had been litigated and resolved and was no longer an issue for the jury to decide. (DE 208-11, Mar. 26, 2016 Order.)

The manufacturer and installer of the equipment settled with the Profitts for around $3 million. (DE 189, Statement at 10; DE 208, Statement at 5.) That left as defendants Appalachian, U.S. Nursing, and Nurse Foote.

On April 1, 2016 – the last business day before trial was scheduled to begin – Appalachian settled with the Profitts for $2 million. At this point, it had incurred legal fees of $1 million defending the claims against it. (DE 208, Statement at 3.) Appalachian asserts that, at that time, the "only conceivable basis" for its liability was its vicarious liability for Nurse Foote's actions. (DE 208, Statement at 8.) On the same day, U.S. Nursing separately settled with the Profitts for $1.1 million. (DE 208, Statement at 3.)

There is no dispute that U.S. Nursing did not defend Appalachian in the state-court action. Nor is there any dispute that U.S. Nursing has not indemnified Appalachian for any costs it incurred in settling or defending the Profitts' action against it. That is what brings Appalachian to this Court.

In its complaint, Appalachian asserts four claims: 1) a claim that U.S. Nursing breached the staffing agreement by failing to defend it in the Profitt litigation (Count I); 2) a claim that U.S. Nursing breached the staffing agreement by failing to indemnify it for the costs it incurred in defending and settling the Profitt litigation (Count II); 3) a claim that U.S. Nursing breached the implied covenant of good faith and fair dealing that applied to its

"contractual obligation to maintain and provide proof of insurance coverage for malpractice claims for the acts of [U.S. Nursing] employees supplied to" Appalachian (Count III); and 4) a claim for "common law indemnity" (Count IV).

Appalachian voluntarily dismissed its common-law indemnity claim. By prior opinion, the Court dismissed Appalachian's claim for breach of the covenant of good faith and fair dealing. This matter is now set for trial on Appalachian's remaining claims for breach of the duties to indemnify and defend. Appalachian moves to exclude testimony of two physicians that U.S. Nusing has identified as experts.

## II. Analysis

Appalachian moves to exclude certain testimony of Charles Eckerline, M.D. Specifically, Appalachian moves to exclude Dr. Eckerline's testimony that moving Profitt from the pickup to the emergency room did not cause him to suffer any secondary injury. Appalachian also moves to exclude Dr. Eckerline's testimony that some nurse other than Nurse Foote was the nurse who moved Profitt into the emergency room.

This case was originally assigned to Judge Amul Thapar. In a prior ruling, he set out what Appalachian must prove to prevail on its indemnification claim. (DE 77, Nov. 3, 2016 Order.)

Judge Thapar ruled that Appalachian does not have to show that it was actually liable to Profitt for his injuries. In reaching that conclusion, he looked at the language of the indemnification provision. That provision requires U.S. Nursing to indemnify Appalachian for "any and all liability or damages that arises from . . . the negligent or intentional act or omission" of U.S. Nursing or its employees. (DE 52-1, Staffing Agreement, § D(15).)

Judge Thapar determined the clause requires Appalachian to prove three things. First, it must prove that a U.S. Nursing employee conducted a "negligent or intentional act or omission." That means it must prove that Nurse Foote was the person who removed Profitt

4

from the truck and took him into the emergency room. It also must show that her acts were "intentional" or "negligent."

Second, Appalachian must show it suffered liability or damage. This means it must present proof of its litigation and settlement costs in the state-court action. (AR 77, Nov. 3, 2016 Order Order at 7-8.)

Finally, Appalachian must prove that Nurse Foote's actions caused – or "directly produced" – Appalachian's damages. (DE 77, Nov. 3, 2016 Order at 8.) Again, Judge Thapar determined that Appalachian does not have to prove that Nurse Foote's acts caused *Profitt's* damages. It only has to prove that her acts caused *Appalachian's* damages. (DE 77, Nov. 3, 2016 Order at 8-9.)

As to Dr. Eckerline's testimony that an unidentified nurse moved Profitt into the emergency room, while this testimony goes to a fact that the jury must find, it does not fall within Dr. Eckerline's medical expertise nor does it require expert testimony. For this opinion, Dr. Eckerline simply evaluated the evidence presented during the Profitt litigation regarding the identity of the nurse who moved Profitt into the emergency room. The jury will evaluate the same evidence and can determine the factual issue of who moved Profitt into the emergency room without the assistance of expert testimony. Further, while Dr. Eckerline has expertise in medical issues, he has no expertise in evaluating trial records to determine the identity of particular actors. Accordingly, Dr. Eckerline will not be permitted to opine that Nurse Foote is not the nurse who moved Profitt into the emergency room.

U.S. Nursing asserts, however, that Dr. Eckerline is not going to opine that Nurse Foote was not the nurse who moved Profitt into the emergency room. It asserts that Dr. Eckerline is going to testify that neither Nurse Foote's name nor her initials appear anywhere in Profitt's medical records. Again, this is not a fact issue that requires expert testimony.

5

Further, Appalachian states that it will stipulate to this fact. Accordingly, Dr. Eckerline's testimony on this issue is not necessary and will be excluded.

Dr. Eckerline will testify, however, as to whether moving Profitt into the emergency room (whoever did it) breached the standard of care. Appalachian does not object to this testimony. Opining on this topic will most likely require that Dr. Eckerline discuss the actor – the person who moved Profitt. He need not identify that person as Nurse Foote if he does not believe it was. He can identify the actor in neutral terms such as "the nurse."

As to Dr. Eckerline's testimony that moving Profitt from the pickup truck to the emergency room did not cause Profitt to suffer any further injury, as discussed, pursuant to a prior order of Judge Thapar, Appalachian does not have to prove that Nurse Foote's actions caused *Profitt's* injuries to prevail on its indemnification claim. It has to show her actions caused only *Appalachian*'s injuries. (DE 77, Nov. 3, 2016 Order.)

Nevertheless, assuming that Appalachian is able to prove Nurse Foote did move Profitt into the emergency room, Appalachian does have to prove those acts breached the standard of care. (DE 77, Nov. 3, 2016 Order.) Dr. Eckerline's opinion that moving Profitt in the manner he was moved did not breach the standard of care is intertwined with his testimony that the actions would not have caused any secondary injury. For example, Dr. Eckerline testifies to the following:

> I am familiar with the concept of a secondary injury or exacerbation of a primary injury. To cause a secondary injury, it is necessary to have significant trauma. Minor normal movements do not generally cause secondary injuries. Patients in the emergency room move and are moved all the time. Patients are never completely immobilized. Minor movements are inevitable and they do not cause a problem, nor did they cause a problem with respect to Mr. Profitt.
>
> . . .
>
> The transfer of Mr. Profitt from the pickup truck in a sitting position into a sitting position in the wheelchair and wheeling

6

> him into the emergency room was a reasonable thing to do and it did not cause Mr. Profitt any secondary injury whatsoever. The claim that those minor movements caused a secondary injury has no credibility.

(DE 186-6, Dr. Eckerline Rpt.)

Dr. Eckerline testifies that moving Profitt into the emergency room did not breach the standard of care and that the reason that it did not is because it would not cause secondary injury. Accordingly, the Court will permit Dr. Eckerline to testify as to whether moving Profitt into the emergency room caused him further injury to the extent that it explains his opinion that moving him did not breach the standard of care.

Appalachian argues that it will be unduly prejudiced by the testimony presumably because the jury may find that its settlement with the Profitts was unreasonable if the jury concludes that nothing that occurred in the hospital actually caused Profitt's injuries. To prevail on its indemnification claim, Appalachian must prove the settlement was reasonable. (DE 159, Order at 6.) The reasonableness of the settlement consists of two components, which are interrelated." *Grand Trunk W. R.R. v. Auto Warehousing Co.*, 686 N.W.2d 756, 764 (Mich. App. 2004)(quoting *Trim v. Clark Equip. Co.*, 274 N.W.2d 33, 35 (Mich. App. 1978)). The first factor is the amount paid to settle the claim and the second is the payor's risk of exposure. *Id*. The risk of exposure is the "probable amount of a judgment . . . balanced against the possibility that the . . . defendant would have prevailed." *Id*. This, again, is an objective standard, which asks what a reasonably prudent person in the settling party's shoes would have settled for given the merits of the underlying claim apparent at the time of settlement. (DE 159, May 31, 2017 Order at 7.)

Appalachian seems to fear that Dr. Eckerline's testimony that nothing that occurred at the hospital caused Profitt's injuries may lead the jury to find that the Profitts' claim against Appalachian was weak and thus, Appalachian's settlement with them was

unreasonable. Appalachian argues this would be improper because, in evaluating the reasonableness of a settlement, "the focus must be on what [Appalachian] knew at the time of settlement." (DE 111, January 4, 2017 Order.) Further, the Court has determined that "the record of the Profitt Litigation [the underlying state court action] provides a more than ample basis for the parties to litigate the reasonableness. . .of [Appalachian's] decision to settle." (DE 111, January 4, 2017 Order.)

Appalachian asserts that, while U.S. Nursing designated Dr. Eckerline as an expert in the Profitt litigation and he was deposed, he did not opine that nothing at the hospital caused Profitt's injuries. Thus, Appalachian argues that it would be improper for the jury to consider Dr. Eckerline's testimony in evaluating whether Appalachian's settlement was reasonable.

In its response, however, U.S. Nursing quotes from Dr. Eckerline's deposition testimony taken on August 23, 2012. This was during the Profitt litigation and before the April 2016 settlement between Appalachian and the Profitts. In that testimony, Dr. Eckerline testified extensively and consistent with his report in this case that moving Profitt after he arrived at the hospital did not cause him to suffer any secondary injury. To the extent that Dr. Eckerline's testimony in this case regarding causation is consistent with his testimony and opinions in the Profitt litigation and to the extent Appalachian was aware of that testimony and of Dr. Eckerline's opinion before it settled the Profitt litigation, it will not be unduly prejudicial for the jury to hear that testimony. This is especially true when weighted against the probative value of the causation testimony to explain Dr. Eckerline's testimony regarding the standard of care, an issue in dispute that Appalachian must prove to prevail on its claims.

Nevertheless, this trial should not be a trial of the underlying case. It would be improper to call at this trial every witness or expert from the underlying case and ask this

jury to determine, based on that evidence, how strong the Profitt's case was in order to determine the reasonableness of the settlement. Jurors would not be able to value the case based on that evidence. Instead, in order to understand the significance of the evidence in the Profitt litigation to the reasonableness of the settlement, the jurors in this case must be presented with testimony from witnesses with expertise in valuing claims. These experts will have reviewed the testimony and evidence in the underlying Profitt litigation that was available at the time Appalachian settled.

Dr. Eckerline's testimony on causation is not being admitted as relevant to the reasonableness of the settlement. It is being admitted solely to the extent it is necessary to explain his opinion that moving Profitt from the pickup truck into the emergency room did not breach the standard of care and will be limited accordingly. Appalachian argues it will be prejudiced because the jury may find against it if it concludes that Nurse Foote's acts did not cause Profitt's injuries. Any possible prejudice, however, can be alleviated through proper jury instructions. As Appalachian itself recognizes in pleadings related to U.S. Nursing's experts, "The jury will presumably consider the expert proof in the underlying case on the reasonableness of the settlement issue, and the opinions offered by the experts in this case on the *de novo* issues in this case. There is no reason to believe that the jury cannot follow the instructions given by the Court and perform these tasks successfully." (DE 202, Resp. at 4.) Appalachian further explains, given that it "must prove negligence to prevail on its indemnity claim, the probative value of. . .evidence, relating directly to that issue, would substantially outweigh any potential for prejudice or confusion, even if such potential existed." (DE 202, Resp. at 4.)

On substantially the same grounds as its objection to Dr. Eckerline's testimony, Appalachian moves to exclude testimony by U.S. Nursing expert Phillip Tibbs, M.D. that

9

nothing that occurred at Appalachian caused Profitt any secondary injury and that a nurse other than Nurse Foote moved Profitt from the truck to the emergency room.

Like Dr. Eckerline, in his report, Dr. Tibbs opines that moving Profitt from the truck to the emergency room did not cause Profitt any additional injury. Unlike Dr. Eckerline, however, in neither Dr. Tibbs' report nor in the portion of his deposition testimony cited by the parties on this motion does Dr. Tibbs opine as to whether Nurse Foote (or any other nurse) breached the standard of care in moving Profitt from the pickup truck into the emergency room. In fact, in Dr. Tibbs' deposition testimony in the Profitt litigation, Nurse Foote's counsel is emphatic that Dr. Tibbs was not offered to opine on the standard of care. (DE 211-2, Tibbs Dep. at 42, 44, 48, 49.) Dr. Tibbs himself expressly declines to testify about the standard of care and he defers to Dr. Eckerline on this issue. (DE 211-2, Tibbs Dep. at 49.)

Appalachian states in its reply brief on this motion to exclude Dr. Tibbs' testimony that *Dr. Eckerline* will provide opinion testimony about the standard of care. (DE 211, Reply at 2, n.2.) It does not state that *Dr. Tibbs* will give such testimony and the Court has not located any such testimony by Dr. Tibbs in the record.

Dr. Tibbs' opinion on whether any acts at Appalachian caused Profitt's injuries is not intertwined with the relevant opinion in this case regarding whether moving Profitt breached the standard of care. Thus, unlike Dr. Eckerline, Dr. Tibbs' opinion will not assist the jury in determining any fact in issue.

On the issue of the reasonableness of the settlement, jurors would not be able to value the Profitts' claim based on Dr. Tibb's testimony. Again, for jurors to determine the reasonableness of the settlement, they will need to hear from experts in valuing claims who have reviewed the testimony and evidence in the underlying litigation that was available at the time Appalachian settled.

As to Dr. Tibbs' opinion regarding the identity of the nurse who moved Profitt into the emergency room, this is not a fact issue that requires expert testimony. For this opinion, like Dr. Eckerline, Dr. Tibbs simply evaluated the evidence presented during the Profitt litigation. The jury will evaluate the same evidence and can determine the factual issue of who moved Profitt into the emergency room without the assistance of expert testimony. Further, Dr. Tibbs has no particular expertise in evaluating identity evidence that the jury will not have.

Accordingly, Dr. Tibbs will not be permitted to opine that Nurse Foote was not the nurse who moved Profitt into the emergency room. As with Dr. Eckerline, however, U.S. Nursing argues that this is not what Dr. Tibbs will testify about. It asserts that Dr. Tibbs is going to testify that neither Nurse Foote's name nor her initials appear anywhere in Profitt's medical records. Appalachian states that it will stipulate to this fact. Accordingly, Dr. Tibbs' testimony on this issue is not necessary and will be excluded.

**III. Conclusion**

For these reasons, the Court hereby ORDERS as follows:

1) Appalachian's motion to exclude certain testimony of Dr. Eckerline (DE 186) is GRANTED in part and DENIED in part as follows:

   A. Any testimony by Dr. Eckerline that Nurse Foote was not the nurse who moved Profitt into the emergency room is EXCLUDED;

   B. Any testimony by Dr. Eckerline that neither Nurse Foote's name nor her initials appear anywhere in Profitt's medical is EXCLUDED and the parties SHALL ENTER into a stipulation on this issue;

   C. If, during his admissible testimony, Dr. Eckerline is required to discuss the nurse who moved Profitt in to the emergency room, he may refer to that nurse as "the nurse" if he does not believe it was Nurse Foote;

D. Dr. Eckerline may testify that moving Profitt into the emergency room did not cause Profitt to suffer secondary injury to the extent that this testimony explains Dr. Eckerline's opinion that moving Profitt in the manner he was moved did not breach the standard of care.

2) Appalachian's motion to exclude certain testimony of Dr. Tibbs (DE 187) is GRANTED as follows:

A. Any testimony by Dr. Tibbs that moving Profitt into the emergeny room from the pickup truck did not cause Profitt to suffer secondary injury is EXCLUDED;

B. Any testimony by Dr. Tibbs that Nurse Foote was not the nurse who moved Profitt into the emergency room is EXCLUDED and

C. Any testimony by Dr. Tibbs that neither Nurse Foote's name nor her initials appear anywhere in Profitt's medical record is EXCLUDED. As discussed, the parties will stipulate to this fact.

Dated May 7, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY