UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

APPALCHIAN REGIONAL
HEALTHCARE, INC.,

    Plaintiff,

V.

U.S. NURSING CORPORATION,

    Defendant.

CIVIL ACTION NO. 7:14-122-KKC-EBA

**OPINION AND ORDER**

\*\*\* \*\*\* \*\*\*

This matter is before the Court on a motion by U.S. Nursing Corporation to exclude the testimony of Appalachian Regional Healthcare, Inc.'s experts William A. Knight, IV and Nurse Susan K. Smith (DE 192).

**I.    Background**

With this action, plaintiff Appalachian Regional Healthcare, Inc. primarily seeks reimbursement for the costs it incurred in defending and settling an action against it in Letcher Circuit Court.

The state-court action was brought in 2008 by Ralph Profitt and his wife after Ralph suffered a severe spinal-cord injury while he was working at a sawmill in Whitesburg, Kentucky. (DE 189, Statement at 1.) At the time of the injury, Profitt was attempting to repair a piece of sawmill equipment. After the injury, Profitt's co-employees drove him in a pickup truck to a hospital in Whitesburg operated by Appalachian where he was treated. Profitt is now paralyzed from the waist down. (DE 189, Statement at 1-2.)

At the time, certain members of Appalachian's nursing staff were on strike. (DE 52, Compl., ¶ 9, Ex. A.) To replace its striking staff, Appalachian entered into a staffing

agreement with defendant U.S. Nursing Corporation, which agreed to provide temporary personnel to fill the vacant nursing positions. (DE 52, Compl., Ex. A, Agreement.) One of the nurses who U.S. Nursing provided was Constance Foote. She was on duty at Appalachian's emergency room when Proffitt arrived at the hospital.

After being treated at the hospital, Profitt and his wife brought suit in state court, initially asserting claims against the manufacturer and installer of the equipment and Appalachian. (DE 197-1, Original Compl.) Later, the Profitts amended the complaint to add as defendants U.S. Nursing and three nurses: Nurses Foote, Sheila Hurt, and Roxanna Parsons. (DE 65-2, First Am. State Ct. Compl.) The Profitts alleged that the three nurses "failed to stabilize and immobilize" Ralph when moving him from the pickup to the emergency room, which worsened his injuries. (DE 65-2, First Am. State Court Compl., ¶16.) Nurses Hurt and Parsons are regularly employed by Appalachian.

The Profitts asserted in the state-court action that Appalachian was vicariously liable for the actions of Hurt, Parsons, and Foote and that U.S. Nursing was vicariously liable for Foote's actions. (DE 25-1, Second Am. State Ct. Complaint, ¶¶ 27-28.) The Profitts also asserted that Appalachian was directly liable for Profitt's injuries because it negligently staffed the hospital and negligently trained the hospital staff. (DE 25-1, State Ct. Compl. ¶¶ 30-31.) According to Appalachian, the Profitts sought compensatory damages of $23.5 million and additional punitive damages. (DE 208, Statement at 2.)

The state court eventually granted Appalachian summary judgment on all claims against it except for the claim of vicarious liability for the negligent actions of Nurse Foote. (DE 197-16, Nov. 13, 2015 Order (summ. j. on negligent training and staffing claims); DE 206-8 Jan. 10, 2014 Order (summ. j. for all acts inside the emergency room.))

Likewise, the court entered summary judgment in favor of Appalachian's nurses Hurt and Parsons. (DE 208-13, Aug. 23, 2012 Order.) The trial judge also entered an order

prohibiting any party from arguing or introducing evidence that Nurse Hurt or Parsons was the individual who came out of the emergency room to assist Profitt with entering the hospital. The trial judge determined that all parties had an opportunity to respond to the motions for summary judgment filed by Nurses Hurt and Parsons and that U.S. Nursing filed no response. Accordingly, the trial judge found that the liability of the two nurses had been litigated and resolved and was no longer an issue for the jury to decide. (DE 208-11, Mar. 26, 2016 Order.)

The manufacturer and installer of the equipment settled with the Profitts for around $3 million. (DE 189, Statement at 10; DE 208, Statement at 5.) That left as defendants Appalachian, U.S. Nursing, and Nurse Foote.

On April 1, 2016 – the last business day before trial was scheduled to begin – Appalachian settled with the Profitts for $2 million. At this point, it had incurred legal fees of $1 million defending the claims against it. (DE 208, Statement at 3.) Appalachian asserts that, at that time, the "only conceivable basis" for its liability was its vicarious liability for Nurse Foote's actions. (DE 208, Statement at 8.) On the same day, U.S. Nursing separately settled with the Profitts for $1.1 million. (DE 208, Statement at 3.)

There is no dispute that U.S. Nursing did not defend Appalachian in the state-court action. Nor is there any dispute that U.S. Nursing has not indemnified Appalachian for any costs it incurred in settling or defending the Profitts' action against it. That is what brings Appalachian to this Court.

In its complaint, Appalachian asserts four claims: 1) a claim that U.S. Nursing breached the staffing agreement by failing to defend it in the Profitt litigation (Count I); 2) a claim that U.S. Nursing breached the staffing agreement by failing to indemnify it for the costs it incurred in defending and settling the Profitt litigation (Count II); 3) a claim that U.S. Nursing breached the implied covenant of good faith and fair dealing that applied to its

3

"contractual obligation to maintain and provide proof of insurance coverage for malpractice claims for the acts of [U.S. Nursing] employees supplied to" Appalachian (Count III); and 4) a claim for "common law indemnity" (Count IV).

Appalachian voluntarily dismissed its common-law indemnity claim. By prior opinion, the Court dismissed Appalachian's claim for breach of the covenant of good faith and fair dealing. This matter is now set for trial on Appalachian's remaining claims for breach of the duties to indemnify and defend. U.S. Nursing moves to exclude testimony of a nurse and doctor identified as experts by Appalachian.

**II.     Analysis**

U.S. Nursing argues that Dr. Knight and Nurse Smith will both testify as to whether Nurse Foote (or some other nurse) violated the standard of care in caring for Profitt. U.S. Nursing argues that the testimony of these experts should not be presented to the jury in this case because they were not disclosed as experts in the underlying Profitt litigation.

To evaluate the propriety of this testimony, it is useful to set out what Appalachian has to prove to prevail on its claims. This case was originally assigned to Judge Amul Thapar. In determining what Appalachian must prove in this case, Judge Thapar looked at the language of the indemnification provision. (DE 77, Nov. 3, 2016 Order.) That provision requires U.S. Nursing to indemnify Appalachian for "any and all liability or damages that arises from . . . the negligent or intentional act or omission" of U.S. Nursing or its employees. (DE 52-1, Staffing Agreement, § D(15).)

Judge Thapar determined the clause requires Appalachian to prove three things. First, it must prove that a U.S. Nursing employee conducted a "negligent or intentional act or omission." That means it must prove that Nurse Foote was the person who removed Profitt from the truck and took him into the emergency room. It also must show that her acts were "intentional" or "negligent."

4

Second, Appalachian must show it suffered liability or damage. This means it must present proof of its litigation and settlement costs in the state-court action. (AR 77, Nov. 3, 2016 Order Order at 7-8.)

Finally, Appalachian must prove that Nurse Foote's actions caused – or "directly produced" – Appalachian's damages. (DE 77, Nov. 3, 2016 Order at 8.) Again, Judge Thapar determined that Appalachian does not have to prove that Nurse Foote's acts caused Profitt's damages. It only has to prove that her acts caused Appalachian's damages. (DE 77, Nov. 3, 2016 Order at 8-9.)

Accordingly, any testimony regarding whether Nurse Foote (or any other nurse) breached the standard of care by moving Profitt from the pickup to the emergency room is certainly relevant. This is a fact question that the jury will be asked to resolve. U.S. Nursing does not dispute that Dr. Knight and Nurse Smith are qualified to opine on this issue. U.S. Nursing instead argues that these witnesses should not be permitted to testify in this case because they were not disclosed as experts in the underlying Profitt litigation in state court.

In making this argument, U.S. Nursing is confusing the proper basis for determining whether Nurse Foote breached the standard of care with the proper basis for determining a fourth element that Appalachian must establish to prevail on its indemnification claim: that the settlement between Appalachian and the Profitts was reasonable. (DE 159, Order at 6.) The reasonableness of the settlement consists of two components, which are interrelated." *Grand Trunk W. R.R. v. Auto Warehousing Co.*, 686 N.W.2d 756, 764 (Mich. App. 2004)(quoting *Trim v. Clark Equip. Co.*, 274 N.W.2d 33, 35 (Mich. App. 1978)). The first factor is the amount paid to settle the claim and the second is the payor's risk of exposure. *Id*. The risk of exposure is the "probable amount of a judgment . . . balanced against the possibility that the . . . defendant would have prevailed." *Id*. This is an objective

5

standard, which asks what a reasonably prudent person in the settling party's shoes would have settled for given the merits of the underlying claim apparent at the time of settlement. (DE 159, May 31, 2017 Order at 7.)

Important to this motion, the Court has previously ruled that, in evaluating the reasonableness of the settlement, "the focus must be on what [Appalachian] knew at the time of settlement." (DE 111, January 4, 2017 Order.) Further, the Court has determined that "the record of the Profitt Litigation [the underlying state court action] provides a more than ample basis for the parties to litigate the reasonableness . . . of [Appalachian's] decision to settle." (DE 111, January 4, 2017 Order.)

U.S. Nursing argues that the Court should exclude the standard-of-care testimony by Dr. Knight and Nurse Smith because they were not set to testify in the underlying Profitt litigation. It argues that Appalachian did not take their testimony into account in settling the Profitt litigation and, thus, the jury should not consider it in determining whether the settlement was reasonable.

This is true. However, Appalachian must also prove in this case that Nurse Foote breached the standard of care in moving Profitt from the pickup to the emergency room. In resolving that issue, the jury will not be limited to what Appalachian knew at the time of the settlement. In determining the issue of whether the settlement was a reasonable thing for Appalachian to do *at the time*, the jury must be limited to considering only the evidence available to Appalachian *at the time*. Appalachian's knowledge at the time of settlement is irrelevant, however, on the question of whether Nurse Foote was actually negligent.

Judge Thapar has previously made this distinction clear. (DE Nov. 9, 2016 Tr. at CM-ECF pp. 8-10.) In a telephonic hearing, Judge Thapar ruled that, if U.S. Nursing intends to contest whether Nurse Foote was negligent, Appalachian is entitled to obtain experts to testify that she was. In contrast, Judge Thapar ruled, if U.S. Nursing were only contesting

the reasonableness of the settlement, the resolution of that factual issue would necessarily be limited to the information available to Appalachian at the time of the settlement. (DE 202, Resp. at 4.)

U.S. Nursing is contesting whether Nurse Foote was negligent. The testimony of Dr. Knight and Nurse Smith is not being admitted as relevant to the reasonableness of the settlement. It is being admitted solely on the issue of whether Nurse Foote did indeed breach the standard of care. U.S. Nursing argues that it will be impossible for the jury to separate out the testimony in this way. Nevertheless, as U.S. Nursing recognizes, the issues "have extensive overlapping evidence. The issues of Nurse Foote's negligence and the reasonableness of [Appalachian's] settlement are inextricably intertwined." (DE 213, Reply at 3.) That situation is unavoidable and is simply the nature of the elements of the claims at issue here. Any possible prejudice can be alleviated through proper jury instructions. Further, the probative value of evidence directly related to an element that must be proved substantially outweighs the potential prejudice or confusion in admitting the evidence.

### III. Conclusion

For these reasons, the Court hereby ORDERS that U.S. Nursing's motion to exclude the testimony of Dr. Knight and Nurse Smith (DE 192) is DENIED.

Dated May 7, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY