UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

| | |
|---|---|
| APPALACHIAN REGIONAL HEALTHCARE, INC., <br>     Plaintiff, <br><br> V. <br><br> U.S. NURSING CORPORATION, <br>     Defendant. | CIVIL ACTION NO. 7:14-122-KKC-EBA <br><br><br> **OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on motion by U.S. Nursing Corporation to exclude testimony by Appalachian Regional Healthcare, Inc.'s legal expert, Robert Houlihan, Jr. (DE 193).

**I.    Background**

With this action, plaintiff Appalachian Regional Healthcare, Inc. primarily seeks reimbursement for the costs it incurred in defending and settling an action against it in Letcher Circuit Court.

The state-court action was brought in 2008 by Ralph Profitt and his wife after Ralph suffered a severe spinal-cord injury while he was working at a sawmill in Whitesburg, Kentucky. (DE 189, Statement at 1.) At the time of the injury, Profitt was attempting to repair a piece of sawmill equipment. After the injury, Profitt's co-employees drove him in a pickup truck to a hospital in Whitesburg operated by Appalachian where he was treated. Profitt is now paralyzed from the waist down. (DE 189, Statement at 1-2.)

At the time, certain members of Appalachian's nursing staff were on strike. (DE 52, Compl., ¶ 9, Ex. A.) To replace its striking staff, Appalachian entered into a staffing

agreement with defendant U.S. Nursing Corporation, which agreed to provide temporary personnel to fill the vacant nursing positions. (DE 52, Compl., Ex. A, Agreement.) One of the nurses who U.S. Nursing provided was Constance Foote. She was on duty at Appalachian's emergency room when Proffitt arrived at the hospital.

After being treated at the hospital, Profitt and his wife brought suit in state court, initially asserting claims against the manufacturer and installer of the equipment and Appalachian. (DE 197-1, Original Compl.) Later, the Profitts amended the complaint to add as defendants U.S. Nursing and three nurses: Nurses Foote, Sheila Hurt, and Roxanna Parsons. (DE 65-2, First Am. State Ct. Compl.) The Profitts alleged that the three nurses "failed to stabilize and immobilize" Ralph when moving him from the pickup to the emergency room, which worsened his injuries. (DE 65-2, First Am. State Court Compl., ¶16.) Nurses Hurt and Parsons are regularly employed by Appalachian.

The Profitts asserted in the state-court action that Appalachian was vicariously liable for the actions of Hurt, Parsons, and Foote and that U.S. Nursing was vicariously liable for Foote's actions. (DE 25-1, Second Am. State Ct. Complaint, ¶¶ 27-28.) The Profitts also asserted that Appalachian was directly liable for Profitt's injuries because it negligently staffed the hospital and negligently trained the hospital staff. (DE 25-1, State Ct. Compl. ¶¶ 30-31.) According to Appalachian, the Profitts sought compensatory damages of $23.5 million and additional punitive damages. (DE 208, Statement at 2.)

The state court eventually granted Appalachian summary judgment on all claims against it except for the claim of vicarious liability for the negligent actions of Nurse Foote. (DE 197-16, Nov. 13, 2015 Order (summ. j. on negligent training and staffing claims); DE 206-8 Jan. 10, 2014 Order (summ. j. for all acts inside the emergency room.))

Likewise, the court entered summary judgment in favor of Appalachian's nurses Hurt and Parsons. (DE 208-13, Aug. 23, 2012 Order.) The trial judge also entered an order

prohibiting any party from arguing or introducing evidence that Nurse Hurt or Parsons was the individual who came out of the emergency room to assist Profitt with entering the hospital. The trial judge determined that all parties had an opportunity to respond to the motions for summary judgment filed by Nurses Hurt and Parsons and that U.S. Nursing filed no response. Accordingly, the trial judge found that the liability of the two nurses had been litigated and resolved and was no longer an issue for the jury to decide. (DE 208-11, Mar. 26, 2016 Order.)

The manufacturer and installer of the equipment settled with the Profitts for around $3 million. (DE 189, Statement at 10; DE 208, Statement at 5.) That left as defendants Appalachian, U.S. Nursing, and Nurse Foote.

On April 1, 2016 – the last business day before trial was scheduled to begin – Appalachian settled with the Profitts for $2 million. At this point, it had incurred legal fees of $1 million defending the claims against it. (DE 208, Statement at 3.) Appalachian asserts that, at that time, the "only conceivable basis" for its liability was its vicarious liability for Nurse Foote's actions. (DE 208, Statement at 8.) On the same day, U.S. Nursing separately settled with the Profitts for $1.1 million. (DE 208, Statement at 3.)

In the staffing agreement, U.S. Nursing agreed to indemnify and defend Appalachian from "any and all liability or damage that arises from . . . the negligent or intentional act or omission" of any U.S. Nursing employee assigned to Appalachian. (DE 52-1, Staffing Agreement § D(15).) There is no dispute that U.S. Nursing did not defend Appalachian in the state-court action. Nor is there any dispute that U.S. Nursing has not indemnified Appalachian for any costs it incurred in settling or defending the Profitts' action against it. That is what brings Appalachian to this Court.

In its complaint, Appalachian asserts four claims: 1) a claim that U.S. Nursing breached the staffing agreement by failing to defend it in the Profitt litigation (Count I); 2) a claim

3

that U.S. Nursing breached the staffing agreement by failing to indemnify it for the costs it incurred in defending and settling the Profitt litigation (Count II); 3) a claim that U.S. Nursing breached the implied covenant of good faith and fair dealing that applied to its "contractual obligation to maintain and provide proof of insurance coverage for malpractice claims for the acts of [U.S. Nursing] employees supplied to" Appalachian (Count III); and 4) a claim for "common law indemnity" (Count IV).

Appalachian voluntarily dismissed its common-law indemnity claim. By prior opinion, the Court dismissed Appalachian's claim for breach of the covenant of good faith and fair dealing. This matter is now set for trial on Appalachian's remaining claims for breach of the duties to indemnify and defend.

U.S. Nursing moves to exclude certain testimony of Robert Houlihan, Jr., an attorney identified by Appalachian as one of its expert witnesses.

## II. Analysis

U.S. Nursing objects to Houlihan testifying that Appalachian's $2 million settlement with the Profitts was "reasonable." It argues this testimony should be excluded because it will "simply tell the jury what result to reach." (DE 193-1, Mem. at 2.)

To evaluate the propriety of Houlihan's testimony, it is useful to set out what Appalachian has to prove to prevail on its claims. This case was originally assigned to Judge Amul Thapar. In determining what Appalachian must prove in this case, Judge Thapar looked at the language of the indemnification provision. (DE 77, Nov. 3, 2016 Order.) That provision requires U.S. Nursing to indemnify and defend Appalachian from "any and all liability or damage that arises from . . . the negligent or intentional act or omission" of U.S. Nursing or its employees. (DE 52-1, Staffing Agreement, § D(15).)

Judge Thapar determined the clause requires Appalachian to prove three things. First, it must prove that a U.S. Nursing employee conducted a "negligent or intentional act or

4

omission." That means it must prove that Nurse Foote was the person who removed Profitt from the truck and took him into the emergency room. It also must show that her acts were "intentional" or "negligent."

Second, Appalachian must show it suffered liability or damage. This means it must present proof of its litigation and settlement costs in the state-court action. (AR 77, Nov. 3, 2016 Order Order at 7-8.)

Finally, Appalachian must prove that Nurse Foote's actions caused – or "directly produced" – Appalachian's damages. (DE 77, Nov. 3, 2016 Order at 8.) Again, Judge Thapar determined that Appalachian does not have to prove that Nurse Foote's acts caused Profitt's damages. It only has to prove that her acts caused Appalachian's damages. (DE 77, Nov. 3, 2016 Order at 8-9.)

In addition, and important for this motion, Appalachian must establish that the settlement between Appalachian and the Profitts was reasonable. (DE 159, Order at 6.) The reasonableness of the settlement consists of two components, which are interrelated." *Grand Trunk W. R.R. v. Auto Warehousing Co.*, 686 N.W.2d 756, 764 (Mich. App. 2004)(quoting *Trim v. Clark Equip. Co.*, 274 N.W.2d 33, 35 (Mich. App. 1978)). The first factor is the amount paid to settle the claim and the second is the payor's risk of exposure. *Id*. The risk of exposure is the "probable amount of a judgment . . . balanced against the possibility that the . . . defendant would have prevailed." *Id*. This is an objective standard, which asks what a reasonably prudent person in the settling party's shoes would have settled for given the merits of the underlying claim apparent at the time of settlement. (DE 159, May 31, 2017 Order at 7.)

U.S. Nursing argues that the Court should exclude Houlihan's testimony that the settlement was reasonable because, with it, he will merely be telling the jury what result to reach on this issue.

As U.S. Nursing recognizes, however, the Federal Rules of Evidence explicitly provide, "An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). The issue is whether the proposed testimony is "helpful to the trier of fact." Fed. R. Evid. 704 advisory committee's notes. *See also Heflin v. Stewart Cty., Tenn.*, 958 F.2d 709, 715 (6th Cir. 1992). More specifically, the proposed testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). On the other hand, an opinion should not be admitted to "merely tell the jury what result to reach." Fed. R. Evid. 704 advisory committee's notes.

In support of its argument that Houlihan should not be permitted to testify on a factual issue that the jury will be asked to determine, U.S. Nursing cites *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994). In that case, the court recognized that an expert may opine on an ultimate issue but stated that the issue must be a "factual one." *Id*. at 1353. The opinion cannot express a "legal conclusion." *Id*. at 1354. The issue there was whether an expert could testify that a city police department acted in deliberate indifference to the welfare of the city's citizens. The court determined an expert could not testify on "the ultimate question of liability." *Id*. at 1353. It also noted that "deliberate indifference" was a legal term and that defining legal terms for the jury was the judge's responsibility, not the responsibility of testifying witnesses. *Id*.

In contrast, whether the settlement at issue in this case was reasonable is a fact issue that the jury will be asked to determine. "Reasonable" is not a legal term that the Court will define by legal instructions. *Teleflex Med. Inc. v. Nat'l Union Fire Nat. Union Fire*

6

*Pittsburgh, PA*, No. 11CV1282-WQH-DHB, 2014 WL 3671309, at *8 (S.D. Cal. July 22, 2014), *aff'd sub nom. Teleflex Med. Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 851 F.3d 976 (9th Cir. 2017). ("The jury was asked to consider the reasonableness of the Ambu settlement, which was a fact issue on which Pretty was allowed to testify.")

Further, Houlihan will not simply tell the jurors that the settlement was reasonable. In his report, Houlihan explains why he has reached that conclusion. He explains that he has reviewed the record in the state court action, including the evidence and judicial orders; jury verdicts in similar cases in Kentucky; and the insurance policies at issue. He has also researched the capabilities and history of Profitt's counsel in the state-court action. He explains that, based on his review, he believes there was a risk of a verdict higher than the settlement amount and the likely insurance coverage.

The reasonableness of a settlement is often established through expert testimony concerning these kinds of matters. *See Bond Safeguard Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 6:13-CV-561-ORL, 2014 WL 5325728, at *9 (M.D. Fla. Oct. 20, 2014), *aff'd*, 628 F. App'x 648 (11th Cir. 2015). Houlihan's testimony will be helpful to the jury. It relates directly to a fact that Appalachian must prove to prevail on its claims. Thus, its probative value is high. U.S. Nursing will not be prejudiced by the testimony. It will have the opportunity to attack Houlihan's testimony through cross-examination and by offering its own counter expert witness. In addition, the Court will instruct the jury that Houlihan and any other experts have testified to "opinions." It will instruct the jury that it does not have to accept those opinions and that, in determining whether to accept an opinion or not, it should consider how the witnesses reached their opinions and other factors in assessing the credibility of witnesses.

U.S. Nursing argues that Houlihan should not be permitted to testify that the settlement benefitted U.S. Nursing or as to verdicts in comparable cases. U.S. Nursing

argues this testimony is impermissible because Houlihan's opinions on these issues were not available to Appalachian when it settled.

Again, the reasonableness of a settlement is determined by considering the probable judgment balanced against the possibility of a defense verdict. The question is what a reasonably prudent person in the settling party's shoes would have settled for given the merits of the underlying claim apparent at the time of settlement. (DE 159, May 31, 2017 Order at 7.) The Court has determined that "the record of the Profitt Litigation [the underlying state court action] provides a more than ample basis for the parties to litigate the reasonableness . . . of [Appalachian's] decision to settle." (DE 111, January 4, 2017 Order.)

This means that, in forming his opinion about the reasonableness of the settlement, Houlihan is limited to considering the record of the state-court action and the facts known to Appalachian at the time it settled. U.S. Nursing has not demonstrated that, in reaching his conclusion about the reasonableness of the settlement, Houlihan considered any factors that did not exist at the time of the settlement.

For all these reasons, the Court hereby ORDERS that U.S. Nursing's motion to exclude certain testimony by Appalachian expert Houlihan (DE 193) is DENIED.

Dated May 8, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY