UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION -- PIKEVILLE

| | |
|---|---|
| APPALACHIAN REGIONAL HEALTHCARE, INC., <br>     **Plaintiff,** <br><br> V. <br><br> U.S. NURSING CORPORATION, <br>     **Defendant.** | CIVIL ACTION NO. 7:14-122-KKC-EBA <br><br> **OPINION AND ORDER** |

This matter is before the Court on a motion by Appalachian Regional Healthcare, Inc. to exclude certain testimony by U.S. Nursing Corporation's legal expert, Joseph Lambert. (DE 188).

**I.     Background**

With this action, plaintiff Appalachian Regional Healthcare, Inc. primarily seeks reimbursement for the costs it incurred in defending and settling an action against it in Letcher Circuit Court.

The state-court action was brought in 2008 by Ralph Profitt and his wife after Ralph suffered a severe spinal-cord injury while he was working at a sawmill in Whitesburg, Kentucky. (DE 189, Statement at 1.) At the time of the injury, Profitt was attempting to repair a piece of sawmill equipment. After the injury, Profitt's co-employees drove him in a pickup truck to a hospital in Whitesburg operated by Appalachian where he was treated. Profitt is now paralyzed from the waist down. (DE 189, Statement at 1-2.)

At the time, certain members of Appalachian's nursing staff were on strike. (DE 52, Compl., ¶ 9, Ex. A.) To replace its striking staff, Appalachian entered into a staffing agreement with defendant U.S. Nursing Corporation, which agreed to provide temporary personnel to fill the vacant nursing positions. (DE 52, Compl., Ex. A, Agreement.) One of

the nurses who U.S. Nursing provided was Constance Foote. She was on duty at Appalachian's emergency room when Proffitt arrived at the hospital.

After being treated at the hospital, Profitt and his wife brought suit in state court, initially asserting claims against the manufacturer and installer of the equipment and Appalachian. (DE 197-1, Original Compl.) Later, the Profitts amended the complaint to add as defendants U.S. Nursing and three nurses: Nurses Foote, Sheila Hurt, and Roxanna Parsons. (DE 65-2, First Am. State Ct. Compl.) The Profitts alleged that the three nurses "failed to stabilize and immobilize" Ralph when moving him from the pickup to the emergency room, which worsened his injuries. (DE 65-2, First Am. State Court Compl., ¶16.) Nurses Hurt and Parsons are regularly employed by Appalachian.

The Profitts asserted in the state-court action that Appalachian was vicariously liable for the actions of Hurt, Parsons, and Foote and that U.S. Nursing was vicariously liable for Foote's actions. (DE 25-1, Second Am. State Ct. Complaint, ¶¶ 27-28.) The Profitts also asserted that Appalachian was directly liable for Profitt's injuries because it negligently staffed the hospital and negligently trained the hospital staff. (DE 25-1, State Ct. Compl. ¶¶ 30-31.) According to Appalachian, the Profitts sought compensatory damages of $23.5 million and additional punitive damages. (DE 208, Statement at 2.)

The state court eventually granted Appalachian summary judgment on all claims against it except for the claim of vicarious liability for the negligent actions of Nurse Foote. (DE 197-16, Nov. 13, 2015 Order (summ. j. on negligent training and staffing claims); DE 206-8 Jan. 10, 2014 Order (summ. j. for all acts inside the emergency room.))

Likewise, the court entered summary judgment in favor of Appalachian's nurses Hurt and Parsons. (DE 208-13, Aug. 23, 2012 Order.) The trial judge also entered an order prohibiting any party from arguing or introducing evidence that Nurse Hurt or Parsons was the individual who came out of the emergency room to assist Profitt with entering the

hospital. The trial judge determined that all parties had an opportunity to respond to the motions for summary judgment filed by Nurses Hurt and Parsons and that U.S. Nursing filed no response. Accordingly, the trial judge found that the liability of the two nurses had been litigated and resolved and was no longer an issue for the jury to decide. (DE 208-11, Mar. 26, 2016 Order.)

The manufacturer and installer of the equipment settled with the Profitts for around $3 million. (DE 189, Statement at 10; DE 208, Statement at 5.) That left as defendants Appalachian, U.S. Nursing, and Nurse Foote.

On April 1, 2016 – the last business day before trial was scheduled to begin – Appalachian settled with the Profitts for $2 million. At this point, it had incurred legal fees of $1 million defending the claims against it. (DE 208, Statement at 3.) Appalachian asserts that, at that time, the "only conceivable basis" for its liability was its vicarious liability for Nurse Foote's actions. (DE 208, Statement at 8.) On the same day, U.S. Nursing separately settled with the Profitts for $1.1 million. (DE 208, Statement at 3.)

In the staffing agreement, U.S. Nursing agreed to indemnify and defend Appalachian from "any and all liability or damage that arises from . . . the negligent or intentional act or omission" of any U.S. Nursing employee assigned to Appalachian. (DE 52-1, Staffing Agreement § D(15).) There is no dispute that U.S. Nursing did not defend Appalachian in the state-court action. Nor is there any dispute that U.S. Nursing has not indemnified Appalachian for any costs it incurred in settling or defending the Profitts' action against it. That is what brings Appalachian to this Court.

In its complaint, Appalachian asserts four claims: 1) a claim that U.S. Nursing breached the staffing agreement by failing to defend it in the Profitt litigation (Count I); 2) a claim that U.S. Nursing breached the staffing agreement by failing to indemnify it for the costs it incurred in defending and settling the Profitt litigation (Count II); 3) a claim that U.S.

Nursing breached the implied covenant of good faith and fair dealing that applied to its "contractual obligation to maintain and provide proof of insurance coverage for malpractice claims for the acts of [U.S. Nursing] employees supplied to" Appalachian (Count III); and 4) a claim for "common law indemnity" (Count IV).

Appalachian voluntarily dismissed its common-law indemnity claim. By prior opinion, the Court dismissed Appalachian's claim for breach of the covenant of good faith and fair dealing. This matter is now set for trial on Appalachian's remaining claims for breach of the duties to indemnify and defend.

Appalachian moves to exclude certain testimony of Joseph Lambert, an attorney and former Chief Justice of the Kentucky Supreme Court who has been identified by U.S. Nursing as one of its expert witnesses.

**II. Analysis**

To evaluate the admissibility of Justice Lambert's testimony, it is useful to set out what Appalachian has to prove to prevail on its claims. This case was originally assigned to Judge Amul Thapar. In determining what Appalachian must prove in this case, Judge Thapar looked at the language of the indemnification provision. (DE 77, Nov. 3, 2016 Order.) That provision requires U.S. Nursing to indemnify and defend Appalachian from "any and all liability or damage that arises from . . . the negligent or intentional act or omission" of U.S. Nursing or its employees. (DE 52-1, Staffing Agreement, § D(15).)

Judge Thapar determined the clause requires Appalachian to prove three things. First, it must prove that a U.S. Nursing employee conducted a "negligent or intentional act or omission." That means it must prove that Nurse Foote was the person who removed Profitt from the truck and took him into the emergency room. It also must show that her acts were "intentional" or "negligent."

Second, Appalachian must show it suffered liability or damage. This means it must present proof of its litigation and settlement costs in the state-court action. (AR 77, Nov. 3, 2016 Order Order at 7-8.)

Finally, Appalachian must prove that Nurse Foote's actions caused – or "directly produced" – Appalachian's damages. (DE 77, Nov. 3, 2016 Order at 8.) Again, Judge Thapar determined that Appalachian does not have to prove that Nurse Foote's acts caused Profitt's damages. It only has to prove that her acts caused Appalachian's damages. (DE 77, Nov. 3, 2016 Order at 8-9.)

In addition, Appalachian must establish that the settlement between Appalachian and the Profitts was reasonable. (DE 159, Order at 6.) The reasonableness of the settlement consists of two components, which are interrelated." *Grand Trunk W. R.R. v. Auto Warehousing Co.*, 686 N.W.2d 756, 764 (Mich. App. 2004)(quoting *Trim v.* Clark *Equip. Co.*, 274 N.W.2d 33, 35 (Mich. App. 1978)). The first factor is the amount paid to settle the claim and the second is the payor's risk of exposure. *Id.* The risk of exposure is the "probable amount of a judgment . . . balanced against the possibility that the . . . defendant would have prevailed." *Id.* This is an objective standard, which asks what a reasonably prudent person in the settling party's shoes would have settled for given the merits of the underlying claim apparent at the time of settlement. (DE 159, May 31, 2017 Order at 7.)

Appalachian asks the Court to exclude the following four opinions by Justice Lambert:

**1) Opinion that U.S. Nursing did not breach its duty to defend**

Appalachian first ask the Court to exclude Justice Lambert's opinion that U.S. Nursing did not breach its duty to defend Appalachian. (DE 209-1, Lambert Rep. at 22.) This opinion will be excluded. It is true that an opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). The crucial issue is whether the proposed testimony is "helpful to the trier of fact." Fed. R. Evid. 704 advisory committee's notes. *See also Heflin*

*v. Stewart Cty., Tenn.*, 958 F.2d 709, 715 (6th Cir. 1992). More specifically, the proposed testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). An opinion should not be admitted to "merely tell the jury what result to reach." Fed. R. Evid. 704 advisory committee's notes.

In *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994), the court recognized that an expert may opine on an ultimate issue but stated that the issue must be a "factual one." *Id*. at 1353. The opinion cannot express a "legal conclusion." *Id*. at 1354. The issue there was whether an expert could testify that a city police department acted in deliberate indifference to the welfare of the city's citizens. The court determined an expert could not testify on "the ultimate question of liability." *Id*. at 1353. It also noted that "deliberate indifference" was a legal term and that defining legal terms for the jury was the judge's responsibility, not the responsibility of testifying witnesses. *Id*.

Likewise, Justice Lamberts' opinion that U.S. Nursing did not breach its duty to defend expresses a legal conclusion, not a factual one. The opinion does not assist the jury in understanding the evidence or in determining a fact issue. The Court will instruct the jurors on the factual elements that Appalachian must prove to establish a breach of the contractual duty to defend. The lawyers will present evidence on these elements and will then argue to the jury, based on that evidence, that U.S. Nursing either did or did not breach its duty to defend. Following the Court's instructions, the jury will be competent to evaluate the evidence presented and make the legal determination as to whether U.S. Nursing breached its duty to defend. Expert opinion is neither necessary nor helpful on this topic. Accordingly, Justice Lambert will not be permitted to testify that U.S. Nursing did not breach its duty to defend Appalachian.

U.S. Nursing argues that Justice Lambert will testify that U.S. Nursing's duty to defend Appalachian was never triggered because Appalachian "was defending identical allegations

directed at other [Appalachian] employees (not just Nurse Foote)" and was also "defending independent allegations of negligence unrelated to the conduct of the unknown female" who moved Profitt. In prior orders, however, the Court has set forth the elements that Appalachian must prove to establish that U.S. Nursing had a duty to defend Appalachian. (DE 77, Nov. 3, 2016 Order; DE 150, May 2, 2017 Order at 5.) The Court will instruct the jury in accordance with those prior orders. Expert testimony on the elements of the duty to defend is not necessary or appropriate.

**2) Justice Lambert's opinion that evidence indicated Nurse Foote did not move Profitt**

Appalachian also objects to Justice Lambert's opinion that "the great weight of the evidence would indicate that it was not Nurse Foote who transported Mr. Profitt to the ER." (DE 188-9, Lambert Dep. at 61).

This testimony would not admissible on the issue of whether Nurse Foote moved Profitt into the emergency room. While this testimony goes to a factual issue that the jury must find, it does not fall within Justice Lambert's legal expertise nor does it require expert testimony. For this opinion, Justice Lambert simply evaluated the evidence presented during the Profitt litigation regarding the identity of the nurse who moved Profitt into the emergency room. The jury will be competent to evaluate the same evidence and can determine the factual issue of whether Nurse Foote moved Profitt into the emergency room without the assistance of expert testimony.

Justice Lambert's opinion that the evidence in the Profitt litigation indicated that Nurse Foote did not move Profitt, however, is intertwined with his opinion that Appalachian's settlement with the Profitts was unreasonable. Again, the reasonableness of a settlement is determined by considering the probable judgment balanced against the possibility of a defense verdict. The question is what a reasonably prudent person in the settling party's

7

shoes would have settled for given the merits of the underlying claim apparent at the time of settlement. (DE 159, May 31, 2017 Order at 7.) By prior order (DE 291, May 8, 2018 Order), this Court has determined that expert testimony is appropriate regarding whether the settlement between the Profitts and Appalachian was reasonable. In opining on the reasonableness of the settlement, the experts will discuss the basis of their opinions, including the factors that lawyers typically take into account in determining whether to settle and for what amount. One such factor is strength of the other side's evidence.

Justice Lambert's opinion that the settlement was unreasonable is based partly on his opinion that there was little evidence indicating that Nurse Foote moved Profitt. This goes to his evaluation of the strength of the evidence on the Profitts' claim that Appalachian should be held vicariously liable for the negligent acts of Nurse Foote. Accordingly, this testimony will be permitted to the extent that it explains Justice Lambert's opinion that the settlement was unreasonable.

Appalachian argues that it will be prejudiced because one of the elements it must prove in this case is that Nurse Foote was indeed the nurse who moved Profitt into the emergency room. It argues that it will be unfairly influential for Justice Lambert to opine on the credibility of witnesses and the weight of the evidence in the underlying Profitt litigation on the issue of whether Nurse Foote moved Profitt. Nevertheless, these are precisely the kinds of factors that a reasonable person would take into account in evaluating a claim. Thus, Justice Lambert must be permitted to address these issues when discussing the reasonableness of the settlement.

Justice Lambert's testimony regarding the strength of the evidence against Nurse Foote is not being admitted as relevant to the issue of whether she actually did move Profitt into the emergency room. It is being admitted solely to the extent necessary to explain his opinion that the settlement was not reasonable and will be limited accordingly. Any

8

potential prejudice to Appalachian can be alleviated through proper jury instructions. As Appalachian itself recognizes in pleadings related to U.S. Nursing's experts, "The jury will presumably consider the expert proof in the underlying case on the reasonableness of the settlement issue, and the opinions offered by the experts in this case on the *de novo* issues in this case. There is no reason to believe that the jury cannot follow the instructions given by the Court and perform these tasks successfully." (DE 202, Resp. at 4.) Further, Appalachian must prove that the settlement was reasonable. The probative value of the basis for expert opinion on that issue outweighs any potential prejudice or confusion.

Appalachian argues that Justice Lambert's opinion regarding the strength of the evidence against Nurse Foote fails to take into account the trial judge's ruling in the Profitt litigation that prohibited the parties from arguing that either Nurse Parsons or Nurse Hurt moved Profitt. Appalachian may certainly make this point on cross examination of Justice Lambert, through its own expert testimony, and in argument to the jury. This is not, however, a reason to exclude the testimony entirely.

**3) Justice Lambert's opinion that the settlement was self-serving**

Justice Lambert opines in his report that the settlement was "entirely self-serving and unreasonable" and "driven by a desire to solely protect" Appalachian. (DE 209-1, Lambert Rpt. at 26.)

Again, the issue here is whether the settlement was reasonable. That depends on the amount paid to settle the claim and the payor's risk of exposure, which is determined by considering the probable amount of the verdict and the possibility of a defense verdict. This is an objective standard, which asks what a reasonably prudent person in the settling party's shoes would have settled for given the merits of the underlying claim apparent at the time of settlement. (DE 159, May 31, 2017 Order at 7.) Appalachian's subjective motivations are irrelevant to this determination.

9

U.S. Nursing argues, however, that Justice Lambert's opinions are relevant to its defense that the settlement was the product of fraud or collusion. U.S. Nursing did not plead fraud or collusion as a defense in its answer. (DE 164, First Amd. Answer.) This would seem to bar U.S. Nursing from asserting these defenses. "A party must affirmatively state any avoidance or affirmative defense," including fraud. Fed. R. Civ. P. 8(c). *See Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524, 535 (Iowa 1995) ("We hold therefore that in settlements like the one here, an insurer, relying on fraud or collusion, must plead and prove these defenses. If either defense is proven, the settlement is invalid and unenforceable against the insurer. The injured party, however, has the burden to prove by a preponderance of the evidence that (1) the underlying claim was covered by the policy, and (2) the settlement which resulted in the judgment was reasonable and prudent.")

Nor does U.S. Nursing mention fraud or collusion in its tendered jury instructions. (DE 269, Jury Instr.)

Further, the collusion defense is intended to protect against a situation where there is no real bargaining or opposition between the plaintiff and the insured. *PETCO Animal Supplies Stores, Inc. v. Ins. Co. of N. Am.*, No. CIV. 10-682 SRN/JSM, 2012 WL 2681415, at *4 (D. Minn. June 4, 2012), *report and recommendation adopted*, No. CIV. 10-682 SRN/JSM, 2012 WL 2680821 (D. Minn. July 6, 2012), *aff'd*, 724 F.3d 1025 (8th Cir. 2013). "In most cases, the only potential collusion is between the insured and the plaintiff, and the collusion inquiry is therefore satisfied by determining whether the settlement is reasonable." *Koehnen v. Herald Fire Ins. Co.*, 89 F.3d 525, 529 (8th Cir. 1996).

Justice Lambert's opinion that the settlement agreement indicates that Appalachian was driven only by a desire to protect itself is not evidence of collusion. Accordingly, it will be excluded as irrelevant and more prejudicial than probative.

### 4) Justice Lambert's opinion that any verdict based on Nurse Foote's conduct would be reversed for insufficient causation evidence

Justice Lambert opines that any verdict against Appalachian based on Nurse Foote's conduct would likely have been reversed because there was insufficient evidence that moving Profitt from the truck to the emergency room caused him to suffer any secondary injury. Here, Justice Lambert argues that the state court should have excluded the testimony of the Profitts' medical expert, Dr. Mario Ammirati, a neurosurgeon who opined that moving Profitt in the manner he was moved caused Profitt to suffer a secondary injury. Lambert opines that Ammirati's testimony was speculative and, thus, an appellate court would have reversed any verdict based on it. (DE 209-1, Rpt. at 28.)

Appalachian argues that the trial judge's ruling on this issue was the "law of the case" at the time that Appalachian settled. Nevertheless, Justice Lambert is permitted to testify as to the reasonableness of the settlement, which must include an evaluation of the merits of the Profitt litigation, including the likelihood of any verdict being reversed on appeal. As Appalachian recognizes, Justice Lambert may testify as to "the possibility that a judgment would be overturned" and "the risk that it would be upheld." (DE 189-1, Mem. at 16.)

Appalachian's real complaint seems to be that Justice Lamberts speaks in terms of "legal absolutes" and does not recognize that the "vast majority of judgments appealed to the Kentucky Court of Appeals are upheld." (DE 188-1, Mem. at 16.) Appalachian may certainly present its own expert testimony on this issue. It may also cross examine Justice Lambert on this point. Nevertheless, this is not a basis to exclude the testimony.

In addition to the specific testimony discussed above, Appalachian also moves to exclude Justice Lambert from testifying as to any opinions not disclosed in his report or deposition. Justice Lambert has, of course, not testified at the trial of this matter yet. Thus, Appalachian asks the Court to rule that, if Justice Lambert plans to testify as to any

opinions he has not disclosed, the Court should prohibit it. This portion of the motion will be denied as premature. Appalachian may reassert it as necessary during Justice Lambert's testimony.

### III. Conclusion

Appalachian's motion to exclude (DE 188) certain opinions of Justice Lambert will be GRANTED in part and DENIED in part as follows:

1) any testimony that U.S. Nursing did not breach its duty to defend Appalachian is EXCLUDED;

2) Justice Lambert's testimony regarding the strength of the evidence against Nurse Foote is admitted solely to the extent necessary to explain his opinion that the settlement was not reasonable and will be limited accordingly;

3) Justice Lambert's opinion that the settlement was "entirely self-serving and unreasonable" and "driven by a desire to solely protect" Appalachian is EXCLUDED;

4) Justice Lambert may testify that any verdict against Appalachian based on Nurse Foote's conduct would likely have been reversed because of insufficient evidence that moving Profitt from the truck to the emergency room caused him to suffer any secondary injury; and

5) Appalachian's motion to exclude Justice Lambert from testifying as to any opinions not disclosed in his report or deposition is DENIED as premature.

Dated May 9, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY