UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| APPALCHIAN REGIONAL HEALTHCARE, INC., | CIVIL ACTION NO. 7:14-122-KKC-EBA |
| Plaintiff, | |
| V. | **OPINION AND ORDER** |
| U.S. NURSING CORPORATION, | |
| Defendant. | |

This matter is before the Court on Appalachian Regional Healthcare, Inc.'s motion to exclude certain argument or testimony regarding nurses Sheila Hurt and Roxanne Parsons (DE 239). For the following reasons, the motion will be granted.

**I. Background**

With this action, plaintiff Appalachian Regional Healthcare, Inc. primarily seeks reimbursement for the costs it incurred in defending and settling an action against it in Letcher Circuit Court.

The state-court action was brought in 2008 by Ralph Profitt and his wife after Ralph suffered a severe spinal-cord injury while he was working at a sawmill in Whitesburg, Kentucky. (DE 189, Statement at 1.) At the time of the injury, Profitt was attempting to repair a piece of sawmill equipment. After the injury, Profitt's co-employees drove him in a pickup truck to a hospital in Whitesburg operated by Appalachian where he was treated. Profitt is now paralyzed from the waist down. (DE 189, Statement at 1-2.)

At the time, certain members of Appalachian's nursing staff were on strike. (DE 52, Compl., ¶ 9, Ex. A.) To replace its striking staff, Appalachian entered into a staffing agreement with defendant U.S. Nursing Corporation, which agreed to provide temporary personnel to fill the vacant nursing positions. (DE 52, Compl., Ex. A, Agreement.) One of

the nurses who U.S. Nursing provided was Constance Foote. She was on duty at Appalachian's emergency room when Proffitt arrived at the hospital.

After being treated at the hospital, Profitt and his wife brought suit in state court, initially asserting claims against the manufacturer and installer of the equipment and Appalachian. (DE 197-1, Original Compl.) Later, the Profitts amended the complaint to add as defendants U.S. Nursing and three nurses: Nurses Foote, Sheila Hurt, and Roxanna Parsons. (DE 65-2, First Am. State Ct. Compl.) The Profitts alleged that the three nurses "failed to stabilize and immobilize" Ralph when moving him from the pickup to the emergency room, which worsened his injuries. (DE 65-2, First Am. State Court Compl., ¶16.) Nurses Hurt and Parsons are regularly employed by Appalachian.

The Profitts asserted in the state-court action that Appalachian was vicariously liable for the actions of Hurt, Parsons, and Foote and that U.S. Nursing was vicariously liable for Foote's actions. (DE 25-1, Second Am. State Ct. Complaint, ¶¶ 27-28.) The Profitts also asserted that Appalachian was directly liable for Profitt's injuries because it negligently staffed the hospital and negligently trained the hospital staff. (DE 25-1, State Ct. Compl. ¶¶ 30-31.) According to Appalachian, the Profitts sought compensatory damages of $23.5 million and additional punitive damages. (DE 208, Statement at 2.)

The state court eventually granted Appalachian summary judgment on all claims against it except for the claim of vicarious liability for the negligent actions of Nurse Foote. (DE 197-16, Nov. 13, 2015 Order (summ. j. on negligent training and staffing claims); DE 206-8 Jan. 10, 2014 Order (summ. j. for all acts inside the emergency room.))

Likewise, the court entered summary judgment in favor of Appalachian's nurses Hurt and Parsons. (DE 208-13, Aug. 23, 2012 Order.) The trial judge also entered an order prohibiting any party from arguing or introducing evidence that Nurse Hurt or Parsons was the individual who came out of the emergency room to assist Profitt with entering the

2

hospital. The trial judge determined that all parties had an opportunity to respond to the motions for summary judgment filed by Nurses Hurt and Parsons and that U.S. Nursing filed no response. Accordingly, the trial judge found that the liability of the two nurses had been litigated and resolved and was no longer an issue for the jury to decide. (DE 208-11, Mar. 26, 2016 Order.)

The manufacturer and installer of the equipment settled with the Profitts for around $3 million. (DE 189, Statement at 10; DE 208, Statement at 5.) That left as defendants Appalachian, U.S. Nursing, and Nurse Foote.

On April 1, 2016 – the last business day before trial was scheduled to begin – Appalachian settled with the Profitts for $2 million. At this point, it had incurred legal fees of $1 million defending the claims against it. (DE 208, Statement at 3.) Appalachian asserts that, at that time, the "only conceivable basis" for its liability was its vicarious liability for Nurse Foote's actions. (DE 208, Statement at 8.) On the same day, U.S. Nursing separately settled with the Profitts for $1.1 million. (DE 208, Statement at 3.)

In the staffing agreement, U.S. Nursing agreed to indemnify and defend Appalachian from "any and all liability or damage that arises from . . . the negligent or intentional act or omission" of any U.S. Nursing employee assigned to Appalachian. (DE 52-1, Staffing Agreement § D(15).) There is no dispute that U.S. Nursing did not defend Appalachian in the state-court action. Nor is there any dispute that U.S. Nursing has not indemnified Appalachian for any costs it incurred in settling or defending the Profitts' action against it. That is what brings Appalachian to this Court.

In its complaint, Appalachian asserts four claims: 1) a claim that U.S. Nursing breached the staffing agreement by failing to defend it in the Profitt litigation (Count I); 2) a claim that U.S. Nursing breached the staffing agreement by failing to indemnify it for the costs it incurred in defending and settling the Profitt litigation (Count II); 3) a claim

that U.S. Nursing breached the implied covenant of good faith and fair dealing that applied to its "contractual obligation to maintain and provide proof of insurance coverage for malpractice claims for the acts of [U.S. Nursing] employees supplied to" Appalachian (Count III); and 4) a claim for "common law indemnity" (Count IV).

Appalachian voluntarily dismissed its common-law indemnity claim. By prior opinion, the Court dismissed Appalachian's claim for breach of the covenant of good faith and fair dealing. This matter is now set for trial on Appalachian's remaining claims for breach of the duties to indemnify and defend.

Appalachian moves to exclude any argument or testimony that Nurse Hurt or Parsons moved Profitt from the pickup truck into the emergency room.

**II. Analysis**

Appalachian argues that U.S. Nursing is barred under the doctrine of issue preclusion from arguing or presenting testimony that Nurse Hurt or Parsons moved Profitt into the emergency room. Again, Nurses Hurt and Parsons moved for summary judgment in the state-court Profitt litigation. (DE 239-7, Summ. J. Mem.) No party filed any opposition to the motion and the state court granted it. (DE 239-8, Aug. 23, 2012 Order.) The state court later ordered that no party could introduce evidence or argue at trial that Nurse Hurt or Parsons moved Profitt into the emergency room, finding that the liability of these nurses had been litigated and resolved. (DE 239-9, Mar. 26, 2016 Order.)

"It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Under Kentucky law, a party is precluded from arguing or presenting evidence on an issue if: (1) the issue in the second case is the same as the issue in the first case, (2) the issue was actually litigated, (3) the issue was actually decided, and (4) the decision on the

4

issue in the prior action was necessary to the court's judgment. *Stemler v. Florence*, 350 F.3d 578, 586 (6th Cir. 2003); *Yeoman v. Com., Health Policy Bd.*, 983 S.W.2d 459, 465 (Ky. 1998).

Appalachian seeks to use the issue-preclusion doctrine offensively. Courts have recognized that "special problems arise when the doctrine is used in an offensive manner." *Bd. of Educ. of Covington v. Gray*, 806 S.W.2d 400, 402 (Ky.Ct.App.1991). Thus, a plaintiff seeking to use the doctrine to prohibit relitigation of an issue must establish two additional elements: "(5) the defendant must have had a 'realistically full and fair opportunity to litigate the issue,' and (6) preclusion must be consistent with 'principles of justice and fairness.'" *Columbia Gas Transmission, LLC v. The Raven Co.*, No. CIV. 12-72-ART, 2014 WL 2711943, at *4 (E.D. Ky. June 13, 2014) (quoting *Berrier v. Bizer*, 57 S.W.3d 271, 281 (Ky.2001)).

Here, the issue is whether Nurse Hurt or Parsons was the individual who moved Profitt from the pickup to the emergency room. That issue was actually litigated and decided by the state court in its summary judgment opinion. The motion for summary judgment filed by Nurses Hurt and Parsons argued that they were entitled to summary judgment precisely because there was no evidence they were involved in moving Profitt from the pickup to the emergency room. They pointed out that the Profitts' experts opined only that the *nurse who moved Profitt* into the emergency room caused Profitt's injuries and breached the standard of care. Nurses Hurt and Parsons argued that this expert testimony did not implicate them because there was no evidence that either of them moved Profitt into the emergency room. (DE 239-7, Summ. J. Mem.) Thus, they argued, they were entitled to summary judgment on the negligence claim against because there was no expert testimony against them on causation or breach.

In their motions, Nurses Hurt and Parsons relied on the following assertions:

5

- No witness, documents, or other pieces of evidence in the record allege that Shelia Hurt or Roxanna Parsons ever came out of the ER.
- No witnesses, documents, or other evidence in the record allege that Roxanna Parsons ever came into contact with Ralph at all.
- According to the evidence in the record, Shelia Hurt's involvement was limited to providing some nursing care to Ralph inside the ER.
- No witness has testified and no other evidence in the record indicates that Shelia Hurt or Roxanna Parsons were involved with Ralph Profitt's extraction from the vehicle or transport from the vehicle into the ER. Two witnesses say that was Connie Foote. (See Deposition of Ralph Profitt of 3/22/10 at pp. 218-219 and Deposition of David English at pp.26). Nobody has said it was Shelia Hurt. Nobody has said it was Roxanna Parsons.

(DE 239-7, Motion for Summ. J. in Profitt litigation at 2-3, 8.)

While the order granting Nurses Hurt and Parsons' motion for summary judgment does not state that there was no evidence that either of them moved Profitt, that was the sole basis for their summary judgment motion. The state court made the basis for its summary-judgment ruling clear in a later order in which it granted Appalachian's motion to preclude U.S. Nursing from arguing or presenting proof that Nurse Hurt or Parsons moved Profitt. The state court noted that the liability of these nurses had been "litigated and resolved." U.S. Nursing had a full and fair opportunity in state court to respond to the nurses' motion for summary judgment and to present evidence indicating that either nurse moved Profitt. Thus, the state-court's ruling in favor of Nurse Hurt and Parsons on this issue is consistent with principles of justice and fairness. Accordingly, U.S. Nursing is precluded from arguing or presenting testimony that Nurse Hurt or Parsons moved Profitt from the pickup to the emergency room.

In its response to Appalachian's motion, U.S. Nursing does not dispute that the state court's ruling on Nurse Hurt and Parson's liability should have preclusive effect. It does not address the doctrine of issue preclusion at all. In response to a different motion by Appalachian, however, U.S. Nursing argues that issue preclusion should not apply here

6

because it "had no incentive to litigate the motion [for summary judgment filed by Nurses Hurt and Parsons] because its argument has consistently been that no matter who the female was who transported Ralph Profitt into the ER, that did not cause him any secondary injury." (DE 302, Response at 8.) This argument is disingenuous. U.S. Nursing had every reason to litigate whether its employee (Nurse Foote) moved Profitt if the evidence had warranted it. If Nurse Foote did not move Profitt, U.S. Nursing could not possibly face any liability, either to the Profitts or to Appalachian. U.S. Nursing itself states that "the most significant and dispositive issue in this indemnity action" is the identity of the nurse who moved Profitt into the emergency room. (DE 302, Response at 1.) Certainly it was a significant and dispositive issue in the underlying Profitt litigation.

In its response to this motion, instead of addressing issue preclusion, U.S. Nursing argues that in "pointing the finger away from Nurse Foote," it is not required to point to any other nurse at all. It argues that, instead of pointing to Nurse Hurt or Parsons, it will simply rebut Appalachian's evidence that it was Nurse Foote who moved Profitt. It is the Court's understanding that the evidence establishes that the person who moved Profitt was a female. There were only three female nurses on duty when Profitt arrived at the hospital: Nurses Foote, Hurt, and Parsons. U.S. Nursing is estopped from arguing that it was Hurt or Parsons who moved Profitt into the emergency room. U.S. Nursing will also be prohibited from arguing that the person who moved Profitt was a fourth unidentified female unless it presents evidence to support that argument.

For all these reasons, the Court hereby ORDERS that Appalachian's motion (DE 239) to preclude testimony and argument that Nurses Hurt or Parsons moved Profitt is GRANTED and all such testimony is EXCLUDED. In addition, unless U.S. Nursing presents evidence that the person who moved Profitt into the emergency room was a fourth unidentified female, it will be precluded from making that argument to the jury.

Dated May 23, 2018.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY