UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION -- PIKEVILLE

| APPALCHIAN REGIONAL HEALTHCARE, INC., | CIVIL ACTION NO. 7:14-122-KKC-EBA |
|---|---|
| Plaintiff, | |
| V. | OPINION AND ORDER |
| U.S. NURSING CORPORATION, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*

This matter is before the Court on Appalachian Regional Healthcare, Inc.'s motion to clarify (DE 299) this Court's order that the trial of this matter will be conducted in two phases. The Court hereby ORDERS that the motion is GRANTED. A clarification is provided below. This clarification is meant to provide a general guide for the parties' trial preparation. Some issues regarding the presentation of evidence will have to be addressed during trial when the Court better understands the kinds of evidence and the context in which the parties seek to present it.

**I. Background**

With this action, plaintiff Appalachian Regional Healthcare, Inc. primarily seeks reimbursement for the costs it incurred in defending and settling an action against it in Letcher Circuit Court.

The state-court action was brought in 2008 by Ralph Profitt and his wife after Ralph suffered a severe spinal-cord injury while he was working at a sawmill in Whitesburg, Kentucky. (DE 189, Statement at 1.) At the time of the injury, Profitt was attempting to repair a piece of sawmill equipment. After the injury, Profitt's co-employees drove him in a

pickup truck to a hospital in Whitesburg operated by Appalachian where he was treated. Profitt is now paralyzed from the waist down. (DE 189, Statement at 1-2.)

At the time, certain members of Appalachian's nursing staff were on strike. (DE 52, Compl., ¶ 9, Ex. A.) To replace its striking staff, Appalachian entered into a staffing agreement with defendant U.S. Nursing Corporation, which agreed to provide temporary personnel to fill the vacant nursing positions. (DE 52, Compl., Ex. A, Agreement.) One of the nurses who U.S. Nursing provided was Constance Foote. She was on duty at Appalachian's emergency room when Proffitt arrived at the hospital.

After being treated at the hospital, Profitt and his wife brought suit in state court, initially asserting claims against the manufacturer and installer of the equipment and Appalachian. (DE 197-1, Original Compl.) Later, the Profitts amended the complaint to add as defendants U.S. Nursing and three nurses: Nurses Foote, Sheila Hurt, and Roxanna Parsons. (DE 65-2, First Am. State Ct. Compl.) The Profitts alleged that the three nurses "failed to stabilize and immobilize" Ralph when moving him from the pickup to the emergency room, which worsened his injuries. (DE 65-2, First Am. State Court Compl., ¶16.) Nurses Hurt and Parsons are regularly employed by Appalachian.

The Profitts asserted in the state-court action that Appalachian was vicariously liable for the actions of Hurt, Parsons, and Foote and that U.S. Nursing was vicariously liable for Foote's actions. (DE 25-1, Second Am. State Ct. Complaint, ¶¶ 27-28.) The Profitts also asserted that Appalachian was directly liable for Profitt's injuries because it negligently staffed the hospital and negligently trained the hospital staff. (DE 25-1, State Ct. Compl. ¶¶ 30-31.) According to Appalachian, the Profitts sought compensatory damages of $23.5 million and additional punitive damages. (DE 208, Statement at 2.)

The state court eventually granted Appalachian summary judgment on all claims against it except for the claim of vicarious liability for the negligent actions of Nurse Foote.

(DE 197-16, Nov. 13, 2015 Order (summ. j. on negligent training and staffing claims); DE 206-8 Jan. 10, 2014 Order (summ. j. for all acts inside the emergency room.))

Likewise, the court entered summary judgment in favor of Appalachian's nurses Hurt and Parsons. (DE 208-13, Aug. 23, 2012 Order.) The trial judge also entered an order prohibiting any party from arguing or introducing evidence that Nurse Hurt or Parsons was the individual who came out of the emergency room to assist Profitt with entering the hospital. The trial judge determined that all parties had an opportunity to respond to the motions for summary judgment filed by Nurses Hurt and Parsons and that U.S. Nursing filed no response. Accordingly, the trial judge found that the liability of the two nurses had been litigated and resolved and was no longer an issue for the jury to decide. (DE 208-11, Mar. 26, 2016 Order.)

The manufacturer and installer of the equipment settled with the Profitts for around $3 million. (DE 189, Statement at 10; DE 208, Statement at 5.) That left as defendants Appalachian, U.S. Nursing, and Nurse Foote.

On April 1, 2016 – the last business day before trial was scheduled to begin – Appalachian settled with the Profitts for $2 million. At this point, it had incurred legal fees of $1 million defending the claims against it. (DE 208, Statement at 3.) Appalachian asserts that, at that time, the "only conceivable basis" for its liability was its vicarious liability for Nurse Foote's actions. (DE 208, Statement at 8.) On the same day, U.S. Nursing separately settled with the Profitts for $1.1 million. (DE 208, Statement at 3.)

In the staffing agreement, U.S. Nursing agreed to indemnify and defend Appalachian from "any and all liability or damage that arises from . . . the negligent or intentional act or omission" of any U.S. Nursing employee assigned to Appalachian. (DE 52-1, Staffing Agreement § D(15).) There is no dispute that U.S. Nursing did not defend Appalachian in the state-court action. Nor is there any dispute that U.S. Nursing has not indemnified

3

Appalachian for any costs it incurred in settling or defending the Profitts' action against it. That is what brings Appalachian to this Court.

In its complaint, Appalachian asserts four claims: 1) a claim that U.S. Nursing breached the staffing agreement by failing to defend it in the Profitt litigation (Count I); 2) a claim that U.S. Nursing breached the staffing agreement by failing to indemnify it for the costs it incurred in defending and settling the Profitt litigation (Count II); 3) a claim that U.S. Nursing breached the implied covenant of good faith and fair dealing that applied to its "contractual obligation to maintain and provide proof of insurance coverage for malpractice claims for the acts of [U.S. Nursing] employees supplied to" Appalachian (Count III); and 4) a claim for "common law indemnity" (Count IV).

Appalachian voluntarily dismissed its common-law indemnity claim. By prior opinion, the Court dismissed Appalachian's claim for breach of the covenant of good faith and fair dealing. This matter is now set for trial on Appalachian's remaining claims for breach of the duties to indemnify and defend.

In a prior order, Judge Amul Thapar set out what Appalachian must prove in this case to prevail on its indemnification claim. Judge Thapar looked at the language of the indemnification provision. (DE 77, Nov. 3, 2016 Order.) That provision requires U.S. Nursing to indemnify and defend Appalachian from "any and all liability or damage that arises from . . . the negligent or intentional act or omission" of U.S. Nursing or its employees. (DE 52-1, Staffing Agreement, § D(15).)

Judge Thapar determined the clause requires Appalachian to prove three things. First, it must prove that a U.S. Nursing employee conducted a "negligent or intentional act or omission." That means it must prove that Nurse Foote was the person who removed Profitt from the truck and took him into the emergency room. It also must show that her acts were "intentional" or "negligent."

Second, Appalachian must show it suffered liability or damage. This means it must present proof of its litigation and settlement costs in the state-court action. (AR 77, Nov. 3, 2016 Order Order at 7-8.)

Finally, Appalachian must prove that Nurse Foote's actions caused – or "directly produced" – Appalachian's damages. (DE 77, Nov. 3, 2016 Order at 8.) Again, Judge Thapar determined that Appalachian does not have to prove that Nurse Foote's acts caused Profitt's damages. It only has to prove that her acts caused Appalachian's damages. (DE 77, Nov. 3, 2016 Order at 8-9.)

In his November 3, 3016 Order, Judge Thapar was particularly addressing the elements required for Appalachian to establish that U.S. Nursing breached the duty to indemnify Appalachian. As to Appalachian's claim that U.S. Nursing breached its duty to defend Appalachian, in a prior order, Magistrate Judge Edward Atkins determined that Appalachian must prove these same three elements. This is because "both the duty to defend and duty to indemnify arise from the exact same language. . . ." (DE 111, Jan. 4, 2017 Order at 4; DE 150, May 2, 2017 Order at 5.) This Court has agreed with that determination. (DE 159, May 31, 2017 Order at 3.)

In addition, Appalachian must establish that the settlement between Appalachian and the Profitts was reasonable. (DE 159, Order at 6.) The reasonableness of the settlement consists of two components, which are interrelated." *Grand Trunk W. R.R. v. Auto Warehousing Co.*, 686 N.W.2d 756, 764 (Mich. App. 2004)(quoting *Trim v. Clark Equip. Co.*, 274 N.W.2d 33, 35 (Mich. App. 1978)). The first factor is the amount paid to settle the claim and the second is the payor's risk of exposure. *Id*. The risk of exposure is the "probable amount of a judgment . . . balanced against the possibility that the . . . defendant would have prevailed." *Id*. This is an objective standard, which asks what a reasonably prudent person in the settling party's shoes would have settled for given the merits of the

underlying claim apparent at the time of settlement. (DE 159, May 31, 2017 Order at 7.) Likewise, Appalachian must establish the reasonableness of the defense costs and expenses it seeks to recover from U.S. Nursing. *The Point/Arc of N. Kentucky, Inc. v. Philadelphia Indem. Ins. Co.*, 154 F. Supp. 3d 503, 515 (E.D. Ky. 2015).

At the pretrial conference in this matter, the Court ruled that the trial would be conducted in two phases. This was primarily to avoid confusing the jury on the significance of certain that will be presented on the issue of causation. Judge Thapar ruled that Appalachian does not have to show that Nurse Foote's acts caused *Profitt's* injuries; it has to show that Nurse Foote's caused *Appalachian's* injuries. Nevertheless, the evidence regarding whether Nurse Foote's acts caused Profitt's injuries will necessarily be discussed in this case. This is because, determining the reasonableness of Appalachian's settlement with the Profitts will necessarily entail an evaluation of the strength of the Profitt's evidence on the claim that Appalachian should be vicariously liable for Nurse Foote's injuries. And that evaluation will necessarily entail an evaluation of the Profitts' evidence that Nurse Foote caused Profitt's injuries.

To avoid confusing the jury on the significance of the causation evidence, the trial will be split into two phases. In Phase I, Appalachian will be required to prove the three indemnification and defense elements set forth above. In Phase II, Appalachian must prove the reasonableness of the settlement and the defenses costs.

Appalachian now asks for a clarification of the evidence that it can present in both phases. The Court will address some of those questions below. This should be sufficient information for the parties' trial-planning purposes. Some issues regarding the presentation of evidence will have to be addressed during trial when the context in which the parties seek to present the evidence is made clear.

6

## II. Background information to be presented to the jury

In order to most efficiently provide sufficient background information to the jury regarding the dispute between the parties, the Court will read them a statement of undisputed facts to prior to any argument or evidence. The Court proposes the following statement for the parties' consideration and comment:

- Appalachian Regional Healthcare, Inc. operates medical facilities in Kentucky.
- One of those facilities is a hospital located in Whitesburg, Kentucky.
- Appalachian Regional entered into a written staffing agreement with U.S. Nursing Corporation. With that agreement, U.S. Nursing agreed to provide staff, including nurses, to work at the Whitesburg hospital.
- One of the nurses who U.S. Nursing provided to Appalachian Regional to work at the Whitesburg hospital was a woman named Constance Foote.
- With the staffing agreement, U.S. Nursing agreed to indemnify and defend Appalachian for any and all liability or damage that arises from the negligent acts or omissions of a U.S. Nursing employee assigned to the Whitesburg hospital.
- A man named Ralph Profitt was treated at the Whitesburg hospital after he suffered a severe injury at his job while trying to repair a piece of equipment.
- After the injury, Profitt's co-employees drove him to the hospital in a pickup truck.
- Nurse Foote was on duty in the emergency room of the hospital when Profitt arrived.
- A female working at the Whitesburg hospital left the emergency room when Profitt arrived and helped one of Profitt's co-employees move Profitt from the truck to a wheelchair.
- That same individual working at the hospital then wheeled Profitt into the emergency room where he was treated.
- After being treated at the hospital, Profitt sued Appalachian Regional and U.S. Nursing in an action in state court.
- In the state-court action, Profitt asserted that the female employee who wheeled him into the emergency room was Nurse Foote.
- He also claimed that the injuries he suffered at work were worsened by Nurse Foote's acts because of the manner in which she moved him from the pickup truck to the emergency room.
- Profitt asserted in the state-court action that Appalachian Regional and U.S. Nursing should be liable for Nurse Foote's actions.
- Appalachian Regional and U.S. Nursing settled Profitt's claims in state court by paying him a certain amount of money.
- With this action in federal court, Appalachian Regional wants the hospital to reimburse it for the costs it incurred in defending and settling Profitt's claim in state court that it was liable for Nurse Foote's conduct.

- In order for Appalachian to prevail on its claim for reimbursement in this Court, it must prove that Nurse Foote helped move Profitt from the pickup truck and then wheeled him into the emergency room.
- In addition, Appalachian must prove that these actions by Nurse Foote breached the medical standard of care.
- Appalachian must also prove that the amount it paid to settle Profitt's claim that it was liable for Nurse Foote's conduct was reasonable. And it must prove that the defense costs it incurred in defending that claim were reasonable.
- These issues will be presented to you in two phases. In phase I, the parties will present evidence regarding whether Nurse Foote was the individual who helped move Profitt from the pickup truck to the emergency room and whether she breached the medical standard of care. After the parties have presented all of the evidence to you on these issues, the Court will give you further instructions and you will be asked to decide both issues.
- In Phase II of the trial, the parties will present evidence regarding the reasonableness of the amounts Appalachian paid to settle and to defend against Profitt's claim that it was liable for Nurse Foote's acts. After the parties have presented all of the evidence to you on this issue, the Court will give you further instructions and you will be asked to decide if the defense and settlement costs that Appalachian paid were reasonable.

## III. Phase I and Phase II Evidence

As to the kinds of evidence that the parties may offer at each phase of the trial, the Court provides the following guidelines:

### A. Phase I

**Element One: Nurse Foote was the actor**
- If U.S. Nursing has evidence that a person other than Nurses Foote, Hurt or Parsons moved Profitt from the pickup into the emergency room, then it may present that evidence and Appalachian may present evidence that Nurse Foote moved Profitt.
- If U.S. Nursing has no evidence that a person other than the three nurses moved Profitt, then it may not argue to the jury that any nurse other than Nurse Foote moved Profitt and the Court will find this element met as a matter of law.
- As the Court has explained by prior opinion, U.S. Nursing is precluded from arguing that Nurse Hurt or Parsons moved Profitt.

**Element Two: Nurse Foote breached the standard of care**
- Parties may present sufficient information about Profitt's accident at work as may be relevant to the standard of care.
- Parties may present medical experts regarding whether Nurse Foote breached the standard of care.
- Dr. Eckerline may testify that moving Profitt in the manner in which he was moved to the emergency room did not breach the standard of care consistent

with his report as the Court has already detailed in a prior order (DE 285, May 7, 2018 Order.) Appalachian is concerned that Dr. Eckerline not be permitted to testify as to whether moving Profitt from the pickup truck to the emergency room caused Profitt additional injury. Appalachian may assert specific objections at trial, when the Court is more aware of the testimony and the context in which it will be offered.

**Element Three: Nurse Foote's acts caused Appalachian's settlement and defense costs**

- Appalachian need only present evidence here that it incurred some settlement and defense costs as a result of the claim against it based on Nurse Foote's actions. Appalachian can prove this element with proof that the settlement covered a claim based on Nurse Foote's conduct.
- U.S. Nursing concedes that Appalachian incurred some costs in defending and settling the claim against Appalachian that it was vicariously liable for Nurse Foote's conduct. (DE 302, Response at 4.) Thus, this element may require no proof at all. It appears that the parties could stipulate that Nurse Foote's acts caused Appalachian to incur settlement and defense costs.

**B. Phase II**

- Parties may present evidence regarding the amount paid by Appalachian to settle the claims against it; the claims that were settled; and the defense costs incurred by Appalachian.
- Parties may present evidence as to whether these costs were caused by the claim against Appalachian based on Nurse Foote's acts or by any other claim against Appalachian.
- Parties may present evidence of the reasonableness of the settlement and defense costs claimed by Appalachian, including the reasonable apportionment of the settlement amount and the defense costs to the claim based on Nurse Foote's conduct.

**IV. Duty to defend**

In its motion to clarify, Appalachian also argues that U.S. Nursing had a duty to defend it from any claim that could potentially come within the language of the staffing agreement. The Court has ruled that, in order to establish that U.S. Nursing breached its duty to defend Appalachian, it must prove the same three preliminary elements as required for the duty to indemnify. (DE 77, Nov. 3, 2016 Order; DE 111, Jan. 4, 2017, Order at 4; DE 150, May 2, 2017 Order at 5; DE 159, May 31, 2017 Order at 3-4.) This is because the indemnification and defense duties are found in the exact same provision of the agreement.

Again, that provision requires that U.S. Nursing indemnify and defend Appalachian from "any and all liability or damage that arises from . . . the negligent or intentional act or omission" of any U.S. Nursing employee assigned to Appalachian. (DE 52-1, Staffing Agreement § D(15).)

Thus, as with the duty to indemnify, to establish U.S. Nursing breached its duty to defend, Appalachian must prove 1) Nurse Foote (a U.S. Nursing employee) did an act (moved Profitt into the emergency room); 2) the act was negligent; and 3) the act caused Appalachian to incur defense costs.

Appalachian argues that, to establish that U.S. Nursing breached its duty to defend, Appalachian has to show only that the Profitts *alleged* that a U.S. Nursing employee committed a negligent act. (DE 299, Mem. at 11.) It argues that U.S. Nursing had a duty to defend it from those allegations, even if Nurse Foote was not ultimately determined to be negligent. But this ignores the language of the staffing agreement. That language does not require U.S. Nursing to defend Appalachian from any *claim* that a U.S. Nursing employee was negligent. It requires U.S. Nursing to defend Appalachian from "any and all liability or damage that arises from . . . the negligent or intentional act or omission" of a U.S. Nursing employee. In other words, U.S. Nursing has a duty to defend only if a U.S. Nursing employee was actually negligent.

Appalachian argues that reading the language of the agreement literally yields absurd results. If U.S. Nursing has no duty to defend until after a trial finding its employee negligent, Appalachian argues, then there really is no duty to defend at all. But the issue of whether a claim against an insured is covered under an insurance policy is often determined after the claim against the insured is resolved. An insurer can always refuse to defend the insured if it does not believe the claims at issue fall within the policy coverage. In that case, whether the claims actually fall within the policy coverage – or whether the

insurer actually had a duty to defend – is determined after the underlying claim against the insured is resolved. *Aetna Cas. & Sur. Co. v. Com.*, 179 S.W.3d 830, 841 (Ky. 2005). Likewise, an insurer can defend a claim against an insured under a reservation of the insurer's rights to seek reimbursement at a later date. In that instance also, the issue of whether the insurer had an actual duty to defend the insured is determined after the claim against the insured is resolved. *Id.*

Appalachian argues that "an insurer has a duty to defend if there is any allegation which potentially, possibly or might come within the coverage terms of the insurance policy." *James Graham Brown Foundation v. St. Paul Fire & Marine Insurance Co.*, 814 S.W.2d 273, 279 (Ky.1991) (internal citations omitted). The Court has assumed this applies even in a non-insurance agreement like the one at issue in this case, which is between two sophisticated commercial entities. Regardless, an insurer is not required to pay to defend an insured from claims if it is ultimately determined that the claims are not covered under the policy.

As discussed, an insurer has two options when a claim is asserted against the insured and the insurer does not believe the claim falls within the policy coverage. The insurer can defend its insured under a reservation of the insurer's rights to seek in a later proceeding reimbursement of its defense costs. *Aetna*, 179 S.W.3d at 841. In that case, whether the insurer actually had a duty to defend will be determined in the proceeding in which the insurer seeks reimbursement from the insured. *Nat'l Tr. Ins. Co. v. Heaven Hill Distilleries, Inc.*, No. 3:14-CV-394-DJH-CHL, 2018 WL 1542148, at *9 (W.D. Ky. Mar. 29, 2018) ("Because Kentucky imposes a strict duty to defend on insurers, even for claims plausibly not within a policy's coverage, it is unlikely that Kentucky would also bar an insurer from later seeking to recoup defense costs in the event that a court determines the claim does not fall within the coverage.") *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598

F.3d 257, 268 (6th Cir. 2010); *United Nat. Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914, 919 (6th Cir. 2002).

A second option for the insurer after a claim is asserted against its insured is to elect not to defend its insured. *Aetna*, 179 S.W.3d at 841. With this option, whether the insurer actually had a duty to defend is determined in a later suit by the insured asserting breach of the duty to defend. *Id*.

U.S. Nursing chose the second route. Thus, now is the time to determine whether the Profitts' claim against Appalachian falls within the staffing agreement's duty-to-defend provision. In making that determination, the Court is bound by the language of the staffing agreement. As discussed, the plain language of the agreement requires that U.S. Nursing defend Appalachian for the negligent acts of U.S. Nursing's employees. Accordingly, the jury will be asked to determine whether 1) Nurse Foote (a U.S. Nursing employee) moved Profitt; 2) whether that act was negligent; and 3) whether that act caused Appalachian to incur defense costs. If the jury answers each of those questions in the affirmative in Phase I, then it will be asked to determine in Phase II if the defense costs claimed by Appalachian are reasonable.

Dated May 23, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY