UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION -- PIKEVILLE

| | |
|---|---|
| APPALCHIAN REGIONAL HEALTHCARE, INC., <br>     **Plaintiff,** <br><br> V. <br><br> U.S. NURSING CORPORATION, <br>     **Defendant.** | CIVIL ACTION NO. 7:14-122-KKC-EBA <br><br><br> **OPINION AND ORDER** |

\*\*\*\*\*\*\*\*\*\*\*

This matter is before the Court on multiple motions in limine and other motions filed by the parties in preparation for trial.

## I. Background

With this action, plaintiff Appalachian Regional Healthcare, Inc. primarily seeks reimbursement for the costs it incurred in defending and settling an action against it in Letcher Circuit Court.

The state-court action was brought in 2008 by Ralph Profitt and his wife after Ralph suffered a severe spinal-cord injury while he was working at a sawmill in Whitesburg, Kentucky. (DE 189, Statement at 1.) At the time of the injury, Profitt was attempting to repair a piece of sawmill equipment. After the injury, Profitt's co-employees drove him in a pickup truck to a hospital in Whitesburg operated by Appalachian where he was treated. Profitt is now paralyzed from the waist down. (DE 189, Statement at 1-2.)

At the time, certain members of Appalachian's nursing staff were on strike. (DE 52, Compl., ¶ 9, Ex. A.) To replace its striking staff, Appalachian entered into a staffing agreement with defendant U.S. Nursing Corporation, which agreed to provide temporary personnel to fill the vacant nursing positions. (DE 52, Compl., Ex. A, Agreement.) One of the

nurses who U.S. Nursing provided was Constance Foote. She was on duty at Appalachian's emergency room when Proffitt arrived at the hospital.

After being treated at the hospital, Profitt and his wife brought suit in state court, initially asserting claims against the manufacturer and installer of the equipment and Appalachian. (DE 197-1, Original Compl.) Later, the Profitts amended the complaint to add as defendants U.S. Nursing and three nurses: Nurses Foote, Sheila Hurt, and Roxanna Parsons. (DE 65-2, First Am. State Ct. Compl.) The Profitts alleged that the three nurses "failed to stabilize and immobilize" Ralph when moving him from the pickup to the emergency room, which worsened his injuries. (DE 65-2, First Am. State Court Compl., ¶16.) Nurses Hurt and Parsons are regularly employed by Appalachian.

The Profitts asserted in the state-court action that Appalachian was vicariously liable for the actions of Hurt, Parsons, and Foote and that U.S. Nursing was vicariously liable for Foote's actions. (DE 25-1, Second Am. State Ct. Complaint, ¶¶ 27-28.) The Profitts also asserted that Appalachian was directly liable for Profitt's injuries because it negligently staffed the hospital and negligently trained the hospital staff. (DE 25-1, State Ct. Compl. ¶¶ 30-31.) According to Appalachian, the Profitts sought compensatory damages of $23.5 million and additional punitive damages. (DE 208, Statement at 2.)

The state court eventually granted Appalachian summary judgment on all claims against it except for the claim of vicarious liability for the negligent actions of Nurse Foote. (DE 197-16, Nov. 13, 2015 Order (summ. j. on negligent training and staffing claims); DE 206-8 Jan. 10, 2014 Order (summ. j. for all acts inside the emergency room.))

Likewise, the court entered summary judgment in favor of Appalachian's nurses Hurt and Parsons. (DE 208-13, Aug. 23, 2012 Order.) The trial judge also entered an order prohibiting any party from arguing or introducing evidence that Nurse Hurt or Parsons was the individual who came out of the emergency room to assist Profitt with entering the

hospital. The trial judge determined that all parties had an opportunity to respond to the motions for summary judgment filed by Nurses Hurt and Parsons and that U.S. Nursing filed no response. Accordingly, the trial judge found that the liability of the two nurses had been litigated and resolved and was no longer an issue for the jury to decide. (DE 208-11, Mar. 26, 2016 Order.)

The manufacturer and installer of the equipment settled with the Profitts for around $3 million. (DE 189, Statement at 10; DE 208, Statement at 5.) That left as defendants Appalachian, U.S. Nursing, and Nurse Foote.

On April 1, 2016 – the last business day before trial was scheduled to begin – Appalachian settled with the Profitts for $2 million. At this point, it had incurred legal fees of $1 million defending the claims against it. (DE 208, Statement at 3.) Appalachian asserts that, at that time, the "only conceivable basis" for its liability was its vicarious liability for Nurse Foote's actions. (DE 208, Statement at 8.) On the same day, U.S. Nursing separately settled with the Profitts for $1.1 million. (DE 208, Statement at 3.)

In the staffing agreement, U.S. Nursing agreed to indemnify and defend Appalachian from "any and all liability or damage that arises from . . . the negligent or intentional act or omission" of any U.S. Nursing employee assigned to Appalachian. (DE 52-1, Staffing Agreement § D(15).) There is no dispute that U.S. Nursing did not defend Appalachian in the state-court action. Nor is there any dispute that U.S. Nursing has not indemnified Appalachian for any costs it incurred in settling or defending the Profitts' action against it. That is what brings Appalachian to this Court.

In its complaint, Appalachian asserts four claims: 1) a claim that U.S. Nursing breached the staffing agreement by failing to defend it in the Profitt litigation (Count I); 2) a claim that U.S. Nursing breached the staffing agreement by failing to indemnify it for the costs it incurred in defending and settling the Profitt litigation (Count II); 3) a claim that U.S.

3

Nursing breached the implied covenant of good faith and fair dealing that applied to its "contractual obligation to maintain and provide proof of insurance coverage for malpractice claims for the acts of [U.S. Nursing] employees supplied to" Appalachian (Count III); and 4) a claim for "common law indemnity" (Count IV).

Appalachian voluntarily dismissed its common-law indemnity claim. By prior opinion, the Court dismissed Appalachian's claim for breach of the covenant of good faith and fair dealing. This matter is now set for trial on Appalachian's remaining claims for breach of the duties to indemnify and defend.

In a prior order, Judge Amul Thapar set out what Appalachian must prove in this case to prevail on its indemnification claim. Judge Thapar looked at the language of the indemnification provision. (DE 77, Nov. 3, 2016 Order.) That provision requires U.S. Nursing to indemnify and defend Appalachian from "any and all liability or damage that arises from . . . the negligent or intentional act or omission" of U.S. Nursing or its employees. (DE 52-1, Staffing Agreement, § D(15).)

Judge Thapar determined the clause requires Appalachian to prove three things. First, it must prove that a U.S. Nursing employee conducted a "negligent or intentional act or omission." That means it must prove that Nurse Foote was the person who removed Profitt from the truck and took him into the emergency room. It also must show that her acts were "intentional" or "negligent."

Second, Appalachian must show it suffered liability or damage. This means it must present proof of its litigation and settlement costs in the state-court action. (AR 77, Nov. 3, 2016 Order Order at 7-8.)

Finally, Appalachian must prove that Nurse Foote's actions caused – or "directly produced" – Appalachian's damages. (DE 77, Nov. 3, 2016 Order at 8.) Judge Thapar determined that Appalachian does not have to prove that Nurse Foote's acts caused Profitt's

4

damages. It only has to prove that her acts caused Appalachian's damages. (DE 77, Nov. 3, 2016 Order at 8-9.)

In his November 3, 3016 Order, Judge Thapar was particularly addressing the elements required for Appalachian to establish that U.S. Nursing breached the duty to indemnify Appalachian. As to Appalachian's claim that U.S. Nursing breached its duty to defend Appalachian, in a prior order, Magistrate Judge Edward Atkins determined that Appalachian must prove these same three elements. This is because "both the duty to defend and duty to indemnify arise from the exact same language. . . ." (DE 111, Jan. 4, 2017 Order at 4; DE 150, May 2, 2017 Order at 5.) This Court has agreed with that determination. (DE 159, May 31, 2017 Order at 3.)

In addition, Appalachian must establish that the settlement between Appalachian and the Profitts was reasonable. (DE 159, Order at 6.) The reasonableness of the settlement consists of two components, which are interrelated." *Grand Trunk W. R.R. v. Auto Warehousing Co.*, 686 N.W.2d 756, 764 (Mich. App. 2004)(quoting *Trim v.* Clark *Equip. Co.*, 274 N.W.2d 33, 35 (Mich. App. 1978)). The first factor is the amount paid to settle the claim and the second is the payor's risk of exposure. *Id.* The risk of exposure is the "probable amount of a judgment . . . balanced against the possibility that the . . . defendant would have prevailed." *Id.* This is an objective standard, which asks what a reasonably prudent person in the settling party's shoes would have settled for given the merits of the underlying claim apparent at the time of settlement. (DE 159, May 31, 2017 Order at 7.) Likewise, Appalachian must establish the reasonableness of the defense costs and expenses it seeks to recover from U.S. Nursing. *The Point/Arc of N. Kentucky, Inc. v. Philadelphia Indem. Ins. Co.*, 154 F. Supp. 3d 503, 515 (E.D. Ky. 2015).

At the pretrial conference in this matter, the Court ruled that the trial would be conducted in two phases. This was primarily to avoid confusing the jury on the significance of certain

5

evidence that will be presented on the issue of causation. Judge Thapar ruled that Appalachian does not have to show that Nurse Foote's acts caused *Profitt's* injuries; it has to show that Nurse Foote's caused *Appalachian's* injuries. Nevertheless, the evidence regarding whether Nurse Foote's acts caused Profitt's injuries will necessarily be discussed in this case. This is because, determining the reasonableness of Appalachian's settlement with the Profitts will necessarily entail an evaluation of the strength of the Profitt's evidence on the claim that Appalachian should be vicariously liable for Nurse Foote's injuries. And that evaluation will necessarily entail an evaluation of the Profitts' evidence that Nurse Foote caused Profitt's injuries.

To avoid confusing the jury on the significance of the causation evidence, the trial will be split into two phases. In Phase I, Appalachian will be required to prove the three indemnification and defense elements set forth above. In Phase II, Appalachian must prove the reasonableness of the settlement and the defenses costs.

The Court now addresses various motions in limine and certain other motions filed by the parties in preparation for trial. The Court's rulings are presented in the attached chart.

Dated May 24, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY