APPALACHIAN REGIONAL
HEALTHCARE, INC.,

      **Plaintiff,**

**V.**

**U.S. NURSING CORPORATION,**

      **Defendant.**

CIVIL ACTION NO. 7:14-122-KKC-EBA

OPINION AND ORDER

\* \* \* \* \* \* \* \* \* \*

This matter is before the Court on U.S. Nursing's objections (DE 181, Am. Obj.) to a September 1, 2017 order (DE 173) by Magistrate Judge Edward Atkins. For the following reasons, the objections are overruled.

## I.     Background

With this action, plaintiff Appalachian Regional Healthcare, Inc. primarily seeks reimbursement for the costs it incurred in defending and settling an action against it in Letcher Circuit Court.

The state-court action was brought in 2008 by Ralph Profitt and his wife after Ralph suffered a severe spinal-cord injury while he was working at a sawmill in Whitesburg, Kentucky. (DE 189, Statement at 1.) At the time of the injury, Profitt was attempting to repair a piece of sawmill equipment. After the injury, Profitt's co-employees drove him in a pickup truck to a hospital in Whitesburg operated by Appalachian where he was treated. Profitt is now paralyzed from the waist down. (DE 189, Statement at 1-2.)

At the time, certain members of Appalachian's nursing staff were on strike. (DE 52, Compl., ¶ 9, Ex. A.) To replace its striking staff, Appalachian entered into a staffing

agreement with defendant U.S. Nursing Corporation, which agreed to provide temporary personnel to fill the vacant nursing positions. (DE 52, Compl., Ex. A, Agreement.) One of the nurses who U.S. Nursing provided was Constance Foote. She was on duty at Appalachian's emergency room when Proffitt arrived at the hospital.

After being treated at the hospital, Profitt and his wife brought suit in state court, initially asserting claims against the manufacturer and installer of the equipment and Appalachian. (DE 197-1, Original Compl.) Later, the Profitts amended the complaint to add as defendants U.S. Nursing and three nurses: Nurses Foote, Sheila Hurt, and Roxanna Parsons. (DE 65-2, First Am. State Ct. Compl.) The Profitts alleged that the three nurses "failed to stabilize and immobilize" Ralph when moving him from the pickup to the emergency room, which worsened his injuries. (DE 65-2, First Am. State Court Compl., ¶16.) Nurses Hurt and Parsons are regularly employed by Appalachian.

The Profitts asserted in the state-court action that Appalachian was vicariously liable for the actions of Hurt, Parsons, and Foote and that U.S. Nursing was vicariously liable for Foote's actions. (DE 25-1, Second Am. State Ct. Complaint, ¶¶ 27-28.) The Profitts also asserted that Appalachian was directly liable for Profitt's injuries because it negligently staffed the hospital and negligently trained the hospital staff. (DE 25-1, State Ct. Compl. ¶¶ 30-31.) According to Appalachian, the Profitts sought compensatory damages of $23.5 million and additional punitive damages. (DE 208, Statement at 2.)

The state court eventually granted Appalachian summary judgment on all claims against it except for the claim of vicarious liability for the negligent actions of Nurse Foote. (DE 197-16, Nov. 13, 2015 Order (summ. j. on negligent training and staffing claims); DE 206-8 Jan. 10, 2014 Order (summ. j. for all acts inside the emergency room).)

Likewise, the court entered summary judgment in favor of Appalachian's nurses Hurt and Parsons. (DE 208-13, Aug. 23, 2012 Order.) The trial judge also entered an order

prohibiting any party from arguing or introducing evidence that Nurse Hurt or Parsons was the individual who came out of the emergency room to assist Profitt with entering the hospital. The trial judge determined that all parties had an opportunity to respond to the motions for summary judgment filed by Nurses Hurt and Parsons and that U.S. Nursing filed no response. Accordingly, the trial judge found that the liability of the two nurses had been litigated and resolved and was no longer an issue for the jury to decide. (DE 208-11, Mar. 26, 2016 Order.)

The manufacturer and installer of the equipment settled with the Profitts for around $3 million. (DE 189, Statement at 10; DE 208, Statement at 5.) That left as defendants Appalachian, U.S. Nursing, and Nurse Foote.

On April 1, 2016 – the last business day before trial was scheduled to begin – Appalachian settled with the Profitts for $2 million. At this point, it had incurred legal fees of $1 million defending the claims against it. (DE 208, Statement at 3.) Appalachian asserts that, at that time, the "only conceivable basis" for its liability was its vicarious liability for Nurse Foote's actions. (DE 208, Statement at 8.) On the same day, U.S. Nursing separately settled with the Profitts for $1.1 million. (DE 208, Statement at 3.)

In the staffing agreement, U.S. Nursing agreed to indemnify and defend Appalachian from "any and all liability or damage that arises from . . . the negligent or intentional act or omission" of any U.S. Nursing employee assigned to Appalachian. (DE 52-1, Staffing Agreement § D(15).) There is no dispute that U.S. Nursing did not defend Appalachian in the state-court action. Nor is there any dispute that U.S. Nursing has not indemnified Appalachian for any costs it incurred in settling or defending the Profitts' action against it. That is what brings Appalachian to this Court.

In its complaint, Appalachian asserts four claims: 1) a claim that U.S. Nursing breached the staffing agreement by failing to defend it in the Profitt litigation (Count I); 2) a claim

that U.S. Nursing breached the staffing agreement by failing to indemnify it for the costs it incurred in defending and settling the Profitt litigation (Count II); 3) a claim that U.S. Nursing breached the implied covenant of good faith and fair dealing that applied to its "contractual obligation to maintain and provide proof of insurance coverage for malpractice claims for the acts of [U.S. Nursing] employees supplied to" Appalachian (Count III); and 4) a claim for "common law indemnity" (Count IV).

Appalachian voluntarily dismissed its common-law indemnity claim. By prior opinion, the Court dismissed Appalachian's claim for breach of the covenant of good faith and fair dealing. This matter is now set for trial on Appalachian's remaining claims for breach of the duties to indemnify and defend.

## II. Analysis

The order by Judge Atkins at issue denied U.S. Nursing's motion to compel Appalachian to produce two kinds of documents: 1) certain assessments of the Profitt litigation and 2) all of Appalachian's agreements with other staffing agencies and the Request for Proposal ("RFP") that led to the staffing agreement at issue in this case.

As to the case assessments, U.S. Nursing argued that they fell under a request it made on November 18, 2016 for "[a]ll documents, photographs and tangible things that support [Appalachian's] claim that its $2.0 million settlement with the Profitt Plaintiffs was reasonable." In response to that request, Appalachian produced no assessments of the Profitt litigation. On May 12, 2017, U.S. Nursing more specifically requested all documents containing case assessments or risks assessments of the Profitt litigation. Appalachian still produced no assessments. Then, on May 23, 2017, Appalachian General Counsel Rick King testified in his deposition that he had "some recollection of a correspondence from Baird Collier – that summarized those issues [relating to case assessment], also an internal

memorandum from David [Caudill] to me giving me his assessment as well as the assessment of counsel."

Appalachian argued that neither the Collier nor the Caudill case assessments fell under the November 2016 request for "all documents, photographs and tangible things that support [Appalachian's] claim that its $2.0 million settlement with the Profitt Plaintiffs was reasonable." It argued that the assessments were privileged and that it did not intend to rely on the documents at trial and, thus, they could not be considered documents that support its claim that the settlement was reasonable. In fact, Appalachian argued, it would not be permitted to rely on the Collier or Caudill assessments to support its claim at trial because the Court has ruled that Appalachian's subjective beliefs about the reasonableness of the settlement are not relevant; reasonableness of the settlement is an objective inquiry.

As to the May 12, 2017 specific request for all case and risk assessments, in addition to the objections discussed above, Appalachian argued the request was untimely. The request was made three days before the discovery deadline but Appalachian would have 30 days to respond to it. That meant that Appalachian would not have to produce the assessments until June 11, 2017, which would be after the May 15, 2017 fact discovery deadline.

Further, Appalachian argued, the July 25, 2017 motion to compel was itself untimely because it was filed after the May 15, 2017 discovery deadline.

For the same reasons, Appalachian refused to produce its agreements with other staffing agencies or the RFP that led to the staffing agreement at issue in this case. U.S. Nursing also made the request for those documents on May 12, 2017, the day after a deposition by Appalachian representative Trina Hall, in which she referred to the RFP. Appalachian refused to produce the requested documents, again arguing that they would not be due until after the deadline for fact discovery. Appalachian recognized that Hall had referenced the RFP only the day before U.S. Nursing requested it but it argued that U.S.

Nursing could have deposed Hall months earlier and not waited until days before the discovery deadline. Moreover, Appalachian argued, there was no reason why U.S. Nursing did not ask for Appalachian's agreements with other staffing agencies or the RFP before the Hall deposition. Finally, Appalachian argued that neither its agreements with other staffing agencies nor the RFP that led to the staffing agreement at issue here are even relevant; what is relevant is the language of the staffing agreement that the parties ultimately signed.

Judge Atkins denied U.S. Nursing's motion to compel, agreeing with Appalachian that the motion itself was untimely because it was filed on July 25, 2017, well after the May 15, 2017 discovery deadline. Judge Atkins noted that any extension of that deadline had been made only for depositions of four particular witnesses. Further, Judge Atkins agreed with Appalachian that the May 12, 2017 specific request for the documents at issue was untimely because Appalachian's deadline to respond would have been after the May 15 discovery deadline.

U.S. Nursing argued that it had "good cause" for requesting at least the RFP so late because it only learned of the RFP's existence in Trena Hall's May 11, 2017 deposition. But Judge Atkins found that U.S. Nursing did not have to wait until days before the discovery deadline to take Hall's deposition.

U.S. Nursing now argues that, in finding its July 25, 2017 motion to compel untimely, Judge Atkins did not take certain "special circumstances" into account. It argues that it did not learn that the assessments existed until Appalachian General Counsel King's May 23, 2017 deposition. And it did not learn that the RFP existed until Trena Hall's May 11, 2017 deposition. Regardless, Appalachian offers no reason why it waited more than two months after these depositions to file the July 25, 2017 motion to compel.

Further, the documents do not seem particularly significant to the material facts in dispute here. Appalachian's subjective beliefs, including its internal assessments, are irrelevant to the reasonableness of the settlement. U.S. Nursing argues that Appalachian's RFP and agreements with other staffing agencies are relevant to the interpretation of the staffing agreement. But it does not point to any ambiguity in the staffing agreement that requires extrinsic evidence of the parties' intent. Indeed, the delay in filing the motion to compel points to the relative unimportance of the requested documents. Finally, this case was filed in 2014. The parties had more than ample time for discovery.

For all these reasons, the objections (DE 178) are OVERRULED.

Dated May 25, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY