# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION -- PIKEVILLE

| | |
|---|---|
| APPALCHIAN REGIONAL HEALTHCARE, INC., <br><br> Plaintiff, <br><br> V. <br><br> U.S. NURSING CORPORATION, <br><br> Defendant. | CIVIL ACTION NO. 7:14-122-KKC-EBA <br><br><br> **OPINION AND ORDER** |

\* \* \* \* \* \* \* \* \* \* \* \*

At a status conference in this matter on May 25, 2018, defendant U.S. Nursing Corporation moved the Court to reconsider its May 23, 2018 ruling, which granted plaintiff Appalachian Regional Healthcare, Inc.'s motion to exclude certain argument and testimony regarding nurses Sheila Hurt and Roxanne Parsons. (DE 306, May 23, 2018 Order.) After the conference, the parties submitted one-page briefs on the issue. The trial was set to begin May 30, 2018. Given the time constraints, the Court entered a short order denying the motion before trial and explains its rationale in this opinion.

## I.     Background

With this action, plaintiff Appalachian Regional Healthcare, Inc. primarily seeks reimbursement for the costs it incurred in defending and settling an action against it in Letcher Circuit Court.

The state-court action was brought in 2008 by Ralph Profitt and his wife after Ralph suffered a severe spinal-cord injury while he was working at a sawmill in Whitesburg, Kentucky. (DE 189, Statement at 1.) At the time of the injury, Profitt was attempting to repair a piece of sawmill equipment. After the injury, Profitt's co-employees drove him in a pickup

truck to a hospital in Whitesburg operated by Appalachian where he was treated. Profitt is now paralyzed from the waist down. (DE 189, Statement at 1-2.)

At the time, certain members of Appalachian's nursing staff were on strike. (DE 52, Compl., ¶ 9, Ex. A.) To replace its striking staff, Appalachian entered into a staffing agreement with defendant U.S. Nursing Corporation, which agreed to provide temporary personnel to fill the vacant nursing positions. (DE 52, Compl., Ex. A, Agreement.) One of the nurses who U.S. Nursing provided was Constance Foote. She was on duty at Appalachian's emergency room when Proffitt arrived at the hospital.

After being treated at the hospital, Profitt and his wife filed a claim in state court, initially asserting claims against the manufacturer and installer of the equipment and Appalachian. (DE 197-1, Original Compl.) Later, the Profitts amended the complaint to add as defendants U.S. Nursing and three nurses: Nurses Foote, Sheila Hurt, and Roxanna Parsons. (DE 65-2, First Am. State Ct. Compl.) The Profitts alleged that the three nurses "failed to stabilize and immobilize" Ralph when moving him from the pickup to the emergency room, which worsened his injuries. (DE 65-2, First Am. State Court Compl., ¶16.) Nurses Hurt and Parsons are regularly employed by Appalachian.

The Profitts asserted in the state-court action that Appalachian was vicariously liable for the actions of Hurt, Parsons, and Foote and that U.S. Nursing was vicariously liable for Foote's actions. (DE 25-1, Second Am. State Ct. Complaint, ¶¶ 27-28.) The Profitts also asserted that Appalachian was directly liable for Profitt's injuries because it negligently staffed the hospital and negligently trained the hospital staff. (DE 25-1, State Ct. Compl. ¶¶ 30-31.) According to Appalachian, the Profitts sought compensatory damages of $23.5 million and additional punitive damages. (DE 208, Statement at 2.)

The state court eventually granted Appalachian summary judgment on all claims against it except for the claim of vicarious liability for the negligent actions of Nurse Foote. (DE

197-16, Nov. 13, 2015 Order (summ. j. on negligent training and staffing claims); DE 206-8, Jan. 10, 2014 Order (summ. j. for all acts inside the emergency room.))

Likewise, the court entered summary judgment in favor of Appalachian's nurses Hurt and Parsons. (DE 208-13, Aug. 23, 2012 Order.) The trial judge also entered an order prohibiting any party from arguing or introducing evidence that Nurse Hurt or Parsons was the individual who came out of the emergency room to assist Profitt with entering the hospital. The trial judge determined that all parties had an opportunity to respond to the motions for summary judgment filed by Nurses Hurt and Parsons and that U.S. Nursing filed no response. Accordingly, the trial judge found that the liability of the two nurses had been litigated and resolved and was no longer an issue for the jury to decide. (DE 208-11, Mar. 26, 2016 Order.)

The manufacturer and installer of the equipment settled with the Profitts for around $3 million. (DE 189, Statement at 10; DE 208, Statement at 5.) That left as defendants Appalachian, U.S. Nursing, and Nurse Foote.

On April 1, 2016 – the last business day before trial was scheduled to begin – Appalachian settled with the Profitts for $2 million. At this point, it had incurred legal fees of $1 million defending the claims against it. (DE 208, Statement at 3.) Appalachian asserts that, at that time, the "only conceivable basis" for its liability was its vicarious liability for Nurse Foote's actions. (DE 208, Statement at 8.) On the same day, U.S. Nursing separately settled with the Profitts for $1.1 million. (DE 208, Statement at 3.)

In the staffing agreement, U.S. Nursing agreed to indemnify and defend Appalachian from "any and all liability or damage that arises from . . . the negligent or intentional act or omission" of any U.S. Nursing employee assigned to Appalachian. (DE 52-1, Staffing Agreement § D(15).) There is no dispute that U.S. Nursing did not defend Appalachian in the state-court action. Nor is there any dispute that U.S. Nursing has not indemnified Appalachian for any

3

costs it incurred in settling or defending the Profitts' action against it. That is what brings Appalachian to this Court.

In its complaint, Appalachian asserts four claims: 1) a claim that U.S. Nursing breached the staffing agreement by failing to defend it in the Profitt litigation (Count I); 2) a claim that U.S. Nursing breached the staffing agreement by failing to indemnify it for the costs it incurred in defending and settling the Profitt litigation (Count II); 3) a claim that U.S. Nursing breached the implied covenant of good faith and fair dealing that applied to its "contractual obligation to maintain and provide proof of insurance coverage for malpractice claims for the acts of [U.S. Nursing] employees supplied to" Appalachian (Count III); and 4) a claim for "common law indemnity" (Count IV).

Appalachian voluntarily dismissed its common-law indemnity claim. By prior opinion, the Court dismissed Appalachian's claim for breach of the covenant of good faith and fair dealing. On May 30, 2018, trial commenced on Appalachian's remaining claims for breach of the duties to indemnify and defend.

Prior to trial, Appalachian moved in limine to exclude any argument or testimony that Nurse Hurt or Parsons moved Profitt from the pickup truck into the emergency room. The Court granted the motion. At the status conference on May 25, 2018, defendant U.S. Nursing Corporation moved the Court to reconsider. Given that trial was set to begin in days, the Court entered a short order denying the motion to reconsider and provides its reasons below.

## II. Analysis

In Appalachian's motion to exclude U.S. Nursing from arguing or presenting testimony that Nurse Hurt or Parsons moved Profitt into the emergency room, Appalachian argued that U.S. Nursing was barred from doing so under the doctrine of issue preclusion or collateral estoppel. Again, Nurses Hurt and Parsons moved for summary judgment in the state-court Profitt litigation. (DE 239-7, Summ. J. Mem.) No party filed any opposition to the motion, and

4

the state court granted it. (DE 239-8, Aug. 23, 2012 Order.) The state court later ordered that no party could introduce evidence or argue at trial that Nurse Hurt or Parsons moved Profitt into the emergency room, finding that the liability of these nurses had been litigated and resolved. (DE 239-9, Mar. 26, 2016 Order.)

"It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). "In other words, if an individual is precluded from litigating a suit in state court by the traditional principles of res judicata, he is similarly precluded from litigating the suit in federal court." *Anderson v. City of Blue Ash*, 798 F.3d 338, 350 (6th Cir. 2015)(quotations, brackets, and citation omitted).

Under Kentucky law, a party is precluded from arguing or presenting evidence on an issue if: (1) the issue in the second case is the same as the issue in the first case, (2) the issue was actually litigated, (3) the issue was actually decided, and (4) the decision on the issue in the prior action was necessary to the court's judgment. *Stemler v. Florence*, 350 F.3d 578, 586 (6th Cir. 2003); *Yeoman v. Com., Health Policy Bd.*, 983 S.W.2d 459, 465 (Ky. 1998). Appalachian seeks to use the issue-prelusion doctrine offensively. Courts have recognized that "special problems arise when the doctrine is used in an offensive manner." *Bd. of Educ. of Covington v. Gray*, 806 S.W.2d 400, 402 (Ky.Ct.App.1991). Thus, a plaintiff seeking to use the doctrine to prohibit relitigation of an issue must establish two additional elements: "(5) the defendant must have had a 'realistically full and fair opportunity to litigate the issue,' and (6) preclusion must be consistent with 'principles of justice and fairness.'" *Columbia Gas Transmission, LLC v. The Raven Co.*, No. CIV. 12-72-ART, 2014 WL 2711943, at *4 (E.D. Ky. June 13, 2014) (quoting *Berrier v. Bizer*, 57 S.W.3d 271, 281 (Ky.2001)).

As the Court explained in its original opinion on Appalachian's motion, the issue here is whether Nurse Hurt or Parsons was the individual who moved Profitt from the pickup to the emergency room. That issue was actually litigated and decided by the state court in its summary judgment opinion. The motion for summary judgment filed by Nurses Hurt and Parsons argued that they were entitled to summary judgment precisely because there was no evidence they were involved in moving Profitt from the pickup to the emergency room. They pointed out that the Profitts' experts opined only that the *nurse who moved Profitt* into the emergency room caused Profitt's injuries and breached the standard of care. Nurses Hurt and Parsons argued that this expert testimony did not implicate them because there was no evidence that either of them moved Profitt. (DE 239-7, Summ. J. Mem.) Thus, they argued, they were entitled to summary judgment on the negligence claim against because there was no expert testimony against them on causation or breach.

In their motion for summary judgment, Nurses Hurt and Parsons relied on the following assertions:

- No witness, documents, or other pieces of evidence in the record allege that Shelia Hurt or Roxanna Parsons ever came out of the ER.
- No witnesses, documents, or other evidence in the record allege that Roxanna Parsons ever came into contact with Ralph at all.
- According to the evidence in the record, Shelia Hurt's involvement was limited to providing some nursing care to Ralph inside the ER.
- No witness has testified and no other evidence in the record indicates that Shelia Hurt or Roxanna Parsons were involved with Ralph Profitt's extraction from the vehicle or transport from the vehicle into the ER. Two witnesses say that was Connie Foote. (See Deposition of Ralph Profitt of 3/22/10 at pp. 218-219 and Deposition of David English at pp.26). Nobody has said it was Shelia Hurt. Nobody has said it was Roxanna Parsons.

(DE 239-7, Motion for Summ. J. in Profitt litigation at 2-3, 8.)

While the order granting Nurses Hurt and Parsons' motion for summary judgment does not state that there was no evidence that either of them moved Profitt, that was the sole basis for the nurses' summary judgment motion. Thus, the state court necessarily made that

6

finding in granting the motion. The state court made the basis for its summary-judgment ruling clear in a later order in which it ruled that, because of the summary judgment ruling, U.S. Nursing could not argue or present proof that "Shelia Hurt or Roxanna Parsons came out of the emergency room to the pickup truck to assist

Ralph Profitt." (DE 208-11, March 26, 2016 State Court Order.) The state court explained that this precise issue had already been actually litigated by the parties and decided by the court:

> This issue is unlike an instance where a Plaintiff has failed to make a claim, prosecute a claim, has settled a claim or has made a judicial admission that a party is not liable. In those instances for purposes of apportionment, another party could introduce proof and argue the responsibility of the party from whom the Plaintiff does not seek recovery. In this action all parties had an opportunity to respond to the motions for summary judgment filed on behalf of Hurt and Parsons. U.S. Nursing chose not to do so, and has not moved to alter, amend or vacate the summary judgment that was entered. Unlike an order of dismissal, a summary judgment is an adjudication of a claim or an issue where there is no material issue of fact. The liability of Hurt and Parsons has been litigated and resolved. It cannot be an issue for the jury.

(DE 208-11, March 26, 2016 State Court Order.)

For purposes of issue preclusion, the state court's summary judgment ruling in favor of Nurses Hurt and Parsons was a final one. As made clear by the subsequent order prohibiting any further argument or evidence on the issue of whether "Shelia Hurt or Roxanna Parsons came out of the emergency room to the pickup truck to assist Ralph Profitt," (DE 208-11, March 26, 2016 State Court Order), the summary judgment ruling was firm and not tentative on this precise issue. *Preferred Care of Delaware, Inc. v. Crocker*, No. 16-6179, 2017 WL 3223003, at *2 (6th Cir. Feb. 28, 2017) (quoting Restatement (Second) of Judgments § 13 (1982)). Further, the summary judgment ruling represented "the completion of all steps in the adjudication of the claim [against Nurses Hurt and Parsons] by the court." *Id*.

In its response (DE 271) to Appalachian's motion in limine on this issue, U.S. Nursing did not dispute that the state court's summary judgment ruling was final for purposes of issue

7

preclusion. Nor did it dispute that the other elements for issue preclusion are met here. In fact, it did not address the doctrine of issue preclusion at all.

In response to a different motion by Appalachian, however, U.S. Nursing did address the issue. (DE 302, Response to Motion to Clarify.) Again, U.S. Nursing did not dispute that the summary judgment ruling was final or that the issue of whether Nurse Hurt or Parsons moved Profitt was actually litigated and decided in the state court action and was necessary to the state court's summary judgment ruling. Instead, U.S. Nursing argued that Appalachian Regional had not met the additional requirements for using collateral estoppel offensively – the fifth and six elements set forth above.

U.S. Nursing argued that, to permit Appalachian Regional to use the doctrine offensively, the Court must consider whether U.S. Nursing any had any incentive in the state-court action to litigate whether Nurse Hurt or Parsons moved Profitt into the emergency room. U.S. Nursing argued it had no such incentive because its position had "consistently been that no matter who the female was who transported Ralph Profitt into the ER, that did not cause him any secondary injury." (DE 302, Response at 8.)

The Court found this argument disingenuous, noting that "U.S. Nursing had every reason to litigate whether its employee (Nurse Foote) moved Profitt if the evidence had warranted it." (DE 306, May 23, 2018 Op. at 7.) After all, the Court noted, "[i]f Nurse Foote did not move Profitt, U.S. Nursing could not possibly face any liability, either to the Profitts or to Appalachian." (DE 306, May 23, 2018 Op. at 7.) U.S. Nursing itself had stated that "the most significant and dispositive issue in this indemnity action" is the identity of the nurse who moved Profitt into the emergency room. (DE 302, Response at 1.) Certainly it was a significant and dispositive issue in the underlying Profitt litigation. In fact, at the May 25, 2018 status conference, U.S. Nursing reiterated that the identity of the female nurse who moved Profitt was

8

"the most critical aspect of the underlying case" and also "the most critical defense in this case." Thus, U.S. Nursing had incentive to litigate this issue.

At the May 25, 2018 status conference and in the subsequent one-page brief in support of its motion to reconsider (DE 316-1), U.S. Nursing has presented a different reason for failing to object to Nurses Hurt and Parsons' motion for summary judgment in the state court-action. It now argues that it was actually prohibited from objecting to the motion. It argues that "[a] defendant cannot defeat a Co-Defendant's unopposed motion for summary judgment." (DE 316-1, Brief.) U.S. Nursing cites no Kentucky rule or law supporting this assertion and the Court is aware of none. In fact, in the two Kentucky state cases cited by U.S. Nursing, the co-defendants did oppose the motions for summary judgment filed by their co-defendants. *Jenkins v. Best*, 250 S.W.3d 680, 685 (Ky. App. 2007), *Dwyer Concrete Lifting of Lexington, Inc. v. Alchemy Engineering, Inc.*, 2013 WL 375471, at * 1 (Ky. App. Feb. 1, 2013).

The judge in the Profitt's Letcher Circuit Court action certainly believed that U.S. Nursing could have responded to the motions, stating, "*all parties had an opportunity to respond to the motions for summary judgment* filed on behalf of Hurt and Parson. U.S. Nursing chose not to do so*, and has not moved to alter, amend or vacate the summary judgment that was entered." (DE 208-11, March 26, 2016 State Court Order at 1)(emphasis added).

U.S. Nursing also now presents another new argument as to why collateral estoppel should not apply to the state court's summary judgment ruling. It argues that it should not be deemed to have had a "full and fair opportunity to litigate" the issue of whether Nurse Hurt or Parsons moved Profitt because U.S. Nursing could not appeal the state court's ruling that the nurses did not move him. Even assuming that U.S. Nursing's status as a co-defendant meant it could not appeal the summary judgment ruling dismissing Hurt and Parsons, the Court cannot find in this case that it was this rule that denied U.S. Nursing an opportunity to fully litigate the liability of Nurses Hurt and Parsons.

9

U.S. Nursing displayed no intention of litigating this issue at even the trial court. As the state court ruled, U.S. Nursing *chose* not to litigate this issue when it had the opportunity to do so. Having made that choice, U.S. Nursing was certainly prohibited from raising the issue on appeal, regardless of whether a defendant can appeal the dismissal of a co-defendant. *See Marksberry v. Chandler*, 126 S.W.3d 747, 753 (Ky.App.2003) ("It is a matter of fundamental law that the trial court should be given an opportunity to consider an issue, so an appellate court will not review an issue not previously raised in the trial court."); *Caslin v. General Electric Co.*, 608 S.W.2d 69, 70 (Ky.App.1980) ("It is elementary that a reviewing court will not consider for the first time an issue not raised in the trial court."); *Lawrence v. Risen*, 598 S.W.2d 474, 476 (Ky.App.1980) ("The Court of Appeals is one of review and is not to be approached as a second opportunity to be heard as a trial court. An issue not timely raised before the circuit court cannot be considered as a new argument before this Court.")

In its brief in support of its motion to reconsider, U.S. Nursing also cites *McDonald v. Petree*, 409 F.3d 724 (6th Cir. 2005). In that case, the Sixth Circuit ruled that, under Tennessee law, a co-defendant could introduce evidence of a second defendant's negligence, even if the second defendant had been dismissed from the action on summary judgment. *Id*. at 729 & n.2. This case did not deal with collateral estoppel at all.

U.S. Nursing may be relying on *McDonald* to argue that the Letcher Circuit Court erred in its evidentiary ruling that U.S. Nursing could not introduce evidence that Hurt or Parsons moved Profitt. It is the state court's summary judgment ruling, however, not its evidentiary ruling, that is the basis for collateral estoppel here. Further, *Jenkins* indicates that Kentucky law differs from the holding in *McDonald*. Under Kentucky law, a co-defendant is prohibited from introducing evidence of the liability of a dismissed co-defendant because "[t]he degree of fault of the party who is dismissed from the action on liability grounds has. . .been

determined" and "his apportionment of liability . . . is 0%." *Jenkins*, 250 S.W.3d at 687 (citing KRS 411.182 and *Jefferson County Com. Attorney's Office v. Kaplan*, 65 S.W.3d 916 (Ky. 2001)). Most importantly, however, the state court's summary judgment ruling serves as a basis for collateral estoppel whether it was wrong or not. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *Borg-Warner Protective Servs. Corp. v. Guardsmark, Inc.*, 946 F. Supp. 495, 498 (E.D. Ky. 1996).

As the Court determined in its prior opinion on this issue, U.S. Nursing had a full and fair opportunity in state court to respond to the motion for summary judgment filed by Nurses Hurt and Parsons. In that response, they would have been entitled to present any evidence that Nurse Hurt or Parsons moved Profitt. Accordingly, the state-court's ruling in favor of Nurses Hurt and Parsons on this issue was consistent with principles of justice and fairness.

For all these reasons, the Court hereby ORDERS that U.S. Nursing's motion to reconsider the Court's May 23, 2018 ruling is DENIED.

Dated July 2, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY